**Jose Jesus GUZMAN, Appellant**

v.

**The STATE of Texas.**

**No. PD–1863–04.**

Court of Criminal Appeals of Texas.

March 29, 2006.

Richard J. Gonzalez, Laredo, for Appellant.

Jose Salvador Tellez II, Asst. District Atty., Laredo, Matthew Paul, State's Atty., Austin, for State.

### OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Jose Jesus Guzman put a loaded semi-automatic gun to his ex-girlfriend's head and pulled the trigger. The gun fired. She was seriously injured. He was indicted for attempted murder. At trial, appellant, who was sixteen at the time of the shooting, testified that he had removed the clip from the gun, so he thought that it was not loaded. It was. Although the trial judge instructed the jury on the lesser-included offense of aggravated assault, he refused appellant's requested instruction on the lesser-included offense of deadly conduct. The jury convicted appellant of attempted murder and assessed the maximum sentence. On appeal, appellant argued that the trial court erred by failing to instruct the jury on deadly conduct. The court of appeals disagreed: "We do not find support in the record for a rational jury to conclude Guzman was only guilty of deadly conduct."[1]

We granted appellant's petition for discretionary review to determine whether a defendant is entitled to an instruction on deadly conduct if the evidence shows that the defendant intentionally pulled the trigger on a gun he believed was unloaded.[2] We find that, given the evidence in this case, he is not. Thus, we affirm the court of appeals.

### I.

The evidence at trial showed that Daniella Galvan and appellant, both high school freshmen, had been sporadically dating or "going around" together for several months. Daniella last broke up with appellant at school on the afternoon of February 21, 2002. Then she and several of her friends went to a nearby park. Appellant's friend, Lauro Salinas, drove appellant to the park, and appellant asked Daniella to go for a ride. She refused. Lauro drove appellant home and left. Appellant retrieved a gun that he had bought

1. *Guzman v. State*, No. 04–03–00548–CR, 2004 WL 2168626, at *1, 2004 Tex.App. LEXIS 8594, *3–4 (Tex.App.-San Antonio 2004) (not designated for publication).

2. We granted review on the question "whether the testimony of the 16 year old defendant that he thought that the handgun was not loaded, because the magazine, or clip, had been removed, is enough to require an instruction on the lesser included offense of deadly conduct?"

"on the street" ten days before and had hidden in his mother's pile of planting soil. Appellant testified that he took the clip out of the gun and the bullets out of the clip. He put the clip and bullets in his pocket, and he put the gun in his waistband. He decided to use the gun to scare Daniella into telling him why she had broken up with him. He then went looking for her. Lauro drove by and saw appellant walking, so he gave appellant a ride to Daniella's house. Lauro did not know that appellant had a gun. No one was at Daniella's house, so Lauro drove appellant to the home of Gilda De Leon, Daniella's friend.

By the time Lauro and appellant drove up to Gilda's house, several of Daniella's friends were out in the front yard, waiting for a ride to a carnival. Daniella, who was still inside, came out when she heard that appellant had asked for her. The two talked just in front of Lauro's car. Meanwhile, Gilda walked over to the driver's side of the car to talk to Lauro.

After a few minutes, Lauro and Gilda heard Daniella and appellant arguing. Daniella said, "No, no, no," and when her friends looked up, they saw that appellant had her in a headlock with a gun pointed at the side of her head. Appellant immediately pulled the trigger and a bullet shot into Daniella's head. Appellant testified that he was shocked that the gun fired because he had taken out the clip, but, unbeknownst to him, there was a bullet in the chamber. Daniella fell to the ground, and appellant started back toward Lauro's car. Danny, one of Daniella's friends, began yelling at appellant. Appellant turned around and pointed the gun at him. Danny fell to the ground, and appellant lowered the gun and got back into Lauro's car. They drove off.

Lauro said appellant sat silently in the car, still holding the gun. Lauro was shocked because he had never seen appel-

lant with a gun until the shooting. When Lauro stopped the car after driving about ten blocks, appellant jumped out and ran off. Appellant testified that he fled because he knew no one would understand that it had been an accident. Lauro called the police.

Daniella lay in the street, her head in a pool of blood, until an ambulance arrived. She stayed in the hospital for a month and slowly improved, but she was still not completely recovered by the time of trial. Daniella testified that the last thing she remembered was going inside Gilda's house to use the restroom. She remembered nothing of the conversation with appellant or of the shooting.

Police quickly learned that appellant was the shooter and obtained a warrant for his arrest. Appellant, meanwhile, had walked across the international bridge into Mexico, taken a taxi to the bus station, and bought a ticket to Aguascalientes. After three months, appellant decided to come back and turn himself in to the police because "my conscience all the time that I was there never left me alone in peace."

II.

The primary disputed issue at trial was appellant's culpable mental state. The State argued that the shooting was intentional. Appellant argued that the shooting was accidental. The court's proposed charge included instructions on attempted murder and the lesser-included offense of aggravated assault. At the charge conference, appellant requested a charge on misdemeanor deadly conduct which would require the jury to find that appellant recklessly engaged in conduct that placed Daniella in imminent danger of serious bodily injury. Appellant argued that he was entitled to an instruction on deadly conduct "because of the defendant's testi-

mony that he was not aware of the risk that this gun was going to discharge."

The State responded that there was no evidence that if appellant was guilty, he was guilty *only* of deadly conduct because "there was evidence presented by the defendant where he basically proved up all of the elements of aggravated assault." The State argued that:

> He said that he knew of the risk. He— he testified that he knew that there was a risk that he could cause serious bodily injury or death to Daniella Galvan, that he consciously pulled the trigger, that he consciously put the gun to her head, and he knew that that constituted—that that was an act that constituted a risk.
>
> He also testified that Daniella Galvan received an injury from a firearm that he discharged, therefore proving up all the elements of aggravated assault, and by doing that, then the defense cannot argue that a jury could only conclude that a lesser included offense was—was committed.

The trial court denied the request for the instruction on deadly conduct.

In closing argument, the State insisted that appellant had the intent to kill: his story was incredible, and there was no way that the gun could have been loaded and cocked when he bought it and remained in that condition for ten days without accidently discharging. Defense counsel argued that the State failed to prove that appellant was guilty of either offense. He did not have even a reckless state of mind; he had not been aware of any risk; it was an accident, pure and simple. The jury found appellant guilty of attempted murder and sentenced him to 20 years' imprisonment and a $10,000 fine.

Appellant complained on appeal that the trial court erred by failing to include an instruction on deadly conduct in the jury charge. The court of appeals disagreed:

> There is no evidence to support a finding that discharge of the gun was accidental; on the contrary, Guzman admitted he intended to pull the trigger and knowingly did pull the trigger. Guzman's conduct of intentionally pointing a gun at Daniella Galvan's head and pulling the trigger extends beyond recklessly placing another in imminent danger of serious bodily injury.... The evidence that Daniella Galvan was injured by Guzman's intentional act of shooting her precludes a rational inference that Guzman was only guilty of deadly conduct; therefore, Guzman was not entitled to a lesser included instruction on deadly conduct.[3]

### III.

■ Upon the defendant's request, a lesser-included offense instruction shall be included in the jury charge if:

(1) "the requested charge is for a lesser-included offense of the charged offense; and

(2) there is some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense."[4]

Thus, we must first compare the elements of the charged offense (before any evidence is offered at trial) with the elements of the lesser offense that might be added to the jury charge. If that offense is a lesser-included offense of the charged offense as it is modified by the indictment allegations, the first prong of the test is met. Then, we must determine if, at the close of the case, there is some evidence

---

**3.** *Guzman v. State,* 2004 WL 2168626, 2004 Tex.App. LEXIS 8594.

**4.** *Hayward v. State,* 158 S.W.3d 476, 478 (Tex. Crim.App.2005); *Campbell v. State,* 149 S.W.3d 149, 153 (Tex.Crim.App.2004).

that would support a rational finding that the defendant is guilty *only* of the lesser included offense. If both of these prongs are met a defendant is entitled to a charge on the lesser-included offense.

We begin by setting out the elements of deadly conduct:

1. The defendant
2. Recklessly
3. Engaged in conduct that placed Daniella Galvan in imminent danger of serious bodily injury.[5]

We then must compare these elements to the elements of attempted murder as alleged in the indictment: [6]

1. The defendant, Jose Jesus Guzman
2. With the specific intent to commit the offense of murder
3. Attempted to cause the death of Daniella Galvan
4. By shooting her with a firearm about the head area [and]
5. That attempt amounted to more than mere preparation that tended but failed to effect the commission of the offense of murder.

We then compare the elements of both offenses to determine whether, in proving attempted murder as it was alleged in the indictment, the State necessarily had to prove all of the elements of deadly conduct, plus something more.[7]

To prove deadly conduct, the evidence would have to show that the defendant engaged in conduct that placed Daniella in imminent danger of serious bodily injury. To prove attempted murder as alleged in this case, the evidence would have to show that the defendant attempted to cause the death of Daniella "by shooting her with a firearm about the head area." That is clearly an act which placed her in imminent danger of serious bodily injury, regardless of the result. Thus, the State, in proving attempted murder by shooting Daniella about the head area, would necessarily have to prove that the defendant engaged in conduct that placed her in imminent danger of serious bodily injury. Neither the indictment for attempted murder nor the lesser offense of deadly conduct required proof of any actual bodily injury to Daniella; thus the entitlement to a charge on the lesser-included offense of deadly conduct does not, in this case, depend upon any bodily injury that the evidence might prove. In this respect, then, the conduct elements of the two offenses are the same, and neither requires a result (i.e., bodily injury).[8]

However, the offenses differ with respect to mental state. To prove deadly

---

5. Tex. Penal Code § 22.05(a).

6. The indictment read, in pertinent part:

   JOSE JESUS GUZMAN, with the specific intent to commit the offense of murder, did then and there attempt to cause the death of an individual, DANIELLA GALVAN[,] by shooting the said DANIELLA GALVAN with a firearm about the head area, said attempt amounting to more than mere preparation that tends but fails to effect the commission of the offense intended, contrary to Sections 15.01 and 19.02 of the Penal Code ...

7. *See Jacob v. State,* 892 S.W.2d 905, 907–09 (Tex.Crim.App.1995) (noting that "each defi-

nition in Article 37.09 is stated with reference to the 'offense charged' and does not enlarge upon the offense charged, but either restricts or reduces culpability as compared to the offense charged;" thus, "the elements of the offense claimed to be a lesser included offense must be examined to see if the elements are functionally the same or less than those required to prove the charged offense").

8. For example, a defendant could be found guilty of attempted murder even if his gun had not contained any bullets or if the gun had misfired, as long as he pointed the gun at his victim's head or pulled the trigger with the intent to cause death.

conduct, the evidence would have to show that the defendant acted recklessly; to prove attempted murder, the evidence would have to show that the defendant acted with specific intent. Article 37.09(3) of the Code of Criminal Procedure explicitly states that one offense is a lesser-included of a greater offense if it differs from the greater "only in the respect that a less culpable mental state suffices to establish its commission." A reckless *mens rea* is a less culpable state of mind than that of an intentional *mens rea*. Thus, deadly conduct is a lesser-included offense of attempted murder under the pleading filed in this case. The first prong of the test is met.

Deadly conduct is also a lesser-included offense of aggravated assault as it was contained in the jury charge in this case.[9]

In the present case, no one disputes that the lesser-included offense of aggravated assault was properly included in the jury charge. In both aggravated assault and deadly conduct, the culpable mental state is recklessness. And, in proving aggravated assault, the evidence would have to show that appellant intentionally, knowingly or recklessly shot Daniella "with a firearm about the head area" and that (1) she suffered serious bodily injury as a result; or (2) she suffered bodily injury and the defendant used or exhibited a deadly weapon during the assault.[10] With deadly conduct, the evidence would have to show merely that the defendant placed Daniella in imminent danger of serious bodily injury by shooting her with a firearm about the head area, regardless of whether he actually caused serious bodily injury or any bodily injury at all.[11] Again, because

---

9. *See Bell v. State,* 693 S.W.2d 434 (Tex.Crim. App.1985). In *Bell,* we stated,

> Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.
> We hold that under Art. 37.09(1), ... reckless conduct is a lesser included offense of "the offense charged" in the instant case because it is established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon.

*Id.* at 439; *see also Isaac v. State,* 167 S.W.3d 469, 474 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) ("we conclude that misdemeanor deadly conduct, as defined by article 22.05(a) of the Texas Penal Code, is a lesser-included offense of aggravated assault by use of a deadly weapon as charged in appellant's indictment."); *Ortiz v. State,* 144 S.W.3d 225, 231–

32 (Tex.App. -Houston [14th Dist.] 2004, pet. ref'd) (*en banc*).

Also, because aggravated assault was not charged in the original indictment, we must evaluate whether deadly conduct is a lesser-included offense of aggravated assault as charged in the jury charge, rather than as charged in the indictment.

10. TEX. PENAL CODE § 22.02(a).

11. The State asserts that appellant was not entitled to the deadly conduct instruction because "if injury actually occurs from an individual's deliberate conduct, the act of shooting towards the victim constitutes more than deadly conduct." State's Brief at 10 (citing *Ramirez v. State,* 976 S.W.2d 219, 227 (Tex. App.-El Paso 1998, pet. ref'd) ("Section 22.05 of the Texas Penal Code covers intent which falls short of harming another: that is, although no physical harm results, the acts are highly dangerous.")). Several other courts of appeals have also held that deadly conduct covers only dangerous acts that cause no physical harm to the complainant. *See, e.g., Garcia v. State,* 92 S.W.3d 574, (Tex.App.-Austin 2002, no pet.); *Walker v. State,* 994 S.W.2d 199, (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd); *Mares v. State,* 903 S.W.2d 419, (Tex.App.-Eastland 1995, pet. ref'd).

As stated in the Model Penal Code Commentaries, the rationale behind "deadly conduct" or "reckless conduct" statutes is to punish risk creation:

More fundamentally, the rationale for Section 211.2 implicates the general significance of resulting harm in the law of homicide and personal injury. Criminal homicide requires that the actor cause the death of another—that is, that his conduct must actually bring about the harm ultimately feared. In many other circumstances, however, actual harm is not a necessary condition of criminal liability. The case for punishment may be complete even if the ultimate harm against which the offense is aimed has not occurred. Conduct that is in some sense preliminary to evil, if committed with the required state of mind, may be an appropriate target of penal sanctions. Examples abound. The law condemns perjury though the trial outcome is not affected. It proscribes bribery of a public servant even though no official action is influenced thereby. It punishes possession of drugs and other contraband without regard to proof of unlawful use. Even in the context of homicide, preliminary conduct may be punished under the law of attempt if the actor has the requisite intent to bring about another's death and if his conduct strongly corroborates the existence of that purpose. In each case the act done and the accompanying state of mind are sufficiently conclusive of blameworthiness and dangerousness to justify punishment without proof of harm.

Section 211.2 does no more than import this principle into the law of unintentional homicide and personal injury. Recklessly causing death of another is criminal homicide. Recklessly causing serious bodily injury is an assault. Section 211.2 applies to "recklessly engaging in conduct that places or may place another in danger of death or serious bodily injury," without regard to whether either harm actually occurs.

MODEL PENAL CODE PART II COMMENTARIES, vol. 1, § 211.2, at 194, 198–99. While deadly conduct is generally aimed at capturing conduct that falls short of harming another, we cannot say that all shootings resulting in death or injury are inevitably and necessarily beyond the scope of the offense of deadly conduct. *See, e.g., Hayes v. State,* 728 S.W.2d 804, 809–10 (Tex.Crim.App.1987) (error to refuse to charge on reckless conduct when defendant testified that shooting was "an accident" which occurred during a struggle); *Ortiz v.*

*State,* 144 S.W.3d 225, 233 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) ("While deadly conduct *may* be a lesser included offense of murder, it is not necessarily a lesser included offense of murder in all cases;" when defendant was charged with murder, trial court did not err in giving instruction on deadly conduct even though complainant had died of gunshot wound); *compare Walker v. State,* 994 S.W.2d 199, 203 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (concluding that "[i]f injury actually occurs from appellant's deliberate conduct, the act of shooting towards the victim constitutes more than deadly conduct[,]" while noting that "[w]e are not holding that all shootings resulting in injury are greater than deadly conduct. To the contrary, accidental shootings that cause injury, if found to have been done recklessly, have been held to be deadly conduct").

Certainly there is nothing in the statute which expressly or even implicitly limits prosecution (or conviction) for the offense of deadly conduct to only that conduct which threatens, but fails, to cause injury to another. The offense of deadly conduct neither requires nor excludes proof of physical injury. *See Ford v. State,* 38 S.W.3d 836, 845 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (in trial for aggravated assault, no error in submitting, at State's request, instruction on lesser-included offense of deadly conduct even though victim had suffered bodily injury). As the court explained in *Ford:*

> When bodily injury is caused by the use of a deadly weapon, the complainant is necessarily exposed to the deadly character of the weapon and the inherent risk of serious bodily injury. The danger of serious bodily injury is necessarily established when a deadly weapon is used in the commission of an offense. It follows, therefore, that proof of causing bodily injury by the actual use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury. In other words, one who causes bodily injury with a deadly weapon necessarily places the complainant in imminent danger of serious bodily injury. Additionally, since deadly conduct is not a result oriented offense, the State can prove that offense by merely proving appellant engaged in the conduct without the additional requirement that a specific result was caused with the requisite criminal intent. Therefore, in the instant case, the offense of deadly conduct could be

the State necessarily must prove that the defendant placed Daniella in imminent danger of serious bodily injury to prove that he committed aggravated assault, deadly conduct is also a lesser-included offense of aggravated assault as set out in the jury charge.[12] Thus, deadly conduct is a lesser-included offense of both attempted murder as alleged in the indictment and aggravated assault as contained in the jury charge.[13]

We must now consider whether the second prong is also met. As stated previously, to be entitled to the deadly conduct charge, there must be some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty *only* of deadly conduct, not attempted murder and not the intervening lesser-included offense of aggravated assault which was also contained in the jury charge.[14]

In his brief, appellant relies very heavily upon a statutory presumption that may be used in lieu of direct evidence to prove the element of recklessness in the deadly conduct statute. That statutory presumption is, "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded."[15] Appellant contends that, while he did not act recklessly, and therefore cannot be found guilty of aggravated assault, his actions invoke a presumption of recklessness under § 22.05(c), and thus the second prong of the test is met. He argues that

> if an actor believes a firearm to be unloaded, a jury would be entitled to acquit a defendant on a charge of aggravated assault, but convict on a charge of deadly conduct.
>
> Thus, where the evidence establishes that the actor believed the firearm to be unloaded, the court should instruct the jury on the lesser included offense of deadly conduct.

In support of this argument, appellant points to testimony by expert witnesses at

---

established by the same or less proof than that needed to establish aggravated assault by causing bodily injury.

*Id.* at 845. Furthermore, from the plain language of the penal statute, it seems clear that it is not the result of conduct (death, serious bodily injury or bodily injury) that distinguishes the offense of deadly conduct from murder, attempted murder, or aggravated assault, but rather the mental state with which the person acts.

**12.** *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986) ("Aggravated assault and reckless conduct are lesser included offenses of attempted murder and attempted capital murder.")

**13.** *See, e.g., McCloud v. State,* 692 S.W.2d 580, 584 (Tex. App.-Houston [1st Dist.] 1985, no pet.) (noting that reckless conduct may be a lesser-included offense of attempted capital murder and the intervening lesser offenses of attempted murder and aggravated assault; harmless error to omit jury instruction on reckless conduct because jury convicted de-

fendant of one intervening lesser offense-attempted murder-thus, it did not consider second intervening lesser offense of aggravated assault, which is a greater offense than reckless conduct).

**14.** *Banda v. State,* 890 S.W.2d 42, 60–61 (Tex. Crim.App.1994) (in capital murder trial, where charge was given on lesser offense of murder, trial court properly denied instructions on aggravated sexual assault and burglary: "Without deciding whether appellant meets the first prong of the test, we hold appellant fails to meet the second prong. The evidence adduced at trial shows that appellant had the deceased's blood on his shirt and told family members that he had killed an old lady. In fact, appellant's statements indicate that if he was not guilty of capital murder, he was guilty of murder alone.... There is no evidence in the record from which a rational trier of fact could conclude that appellant was guilty only of aggravated sexual assault or burglary.").

**15.** Tex. Penal Code § 22.05(c).

the trial that "[t]here is no way of knowing, just by looking at this particular handgun, and without manipulating this handgun, whether there is a bullet in the chamber[.]" And, throughout his own testimony, appellant stressed that he did not know the gun was loaded. He thought it was unloaded because he had removed the clip, and thus did not actually consciously disregard a known risk.

■ However, appellant's contention is flawed in three important ways. First, a statutory presumption, such as the one upon which appellant relies, is not an element of an offense because it is not part of the statutory definition of the crime.[16] It is simply a guide to jurors that they may infer recklessness from proof, beyond a reasonable doubt, that the defendant pointed a firearm at another person.[17] It "is not evidence nor does it 'supply' evidence."[18] If one accepts appellant's contention that the evidence at trial showed that he did not act recklessly, a permissive statutory presumption does not push appellant over the hurdle of meeting the second, evidentiary, prong of the test. In sum, a statutory presumption may play no part in determining whether a defendant is entitled to a lesser-included offense instruction.

Second, appellant cannot argue that there is some evidence that he "recklessly engaged in conduct that places another in imminent danger of serious bodily injury," but no evidence that he "recklessly caused serious bodily injury," simply by arguing that he did not act with actual recklessness. He contends that, because he testified that he thought the gun was unloaded, there is some evidence in the record that he was not aware of any risk of harm, and thus he did not *actually* possess the required mental state of recklessness. But, he argues, the statutory presumption would nonetheless allow the jury to conclude from the very act of pointing that gun at Daniella that he was reckless for the purposes of a deadly conduct charge. However, the presumption, if it applied at all to the determination of lesser-included offenses (which it does not), would also prove recklessness for the greater offense of aggravated assault. That is, a reckless state of mind may be inferred or presumed from the act of pointing a gun at someone regardless of whether that person is charged with reckless deadly conduct or reckless aggravated assault. While the statute setting out the elements of aggravated assault does not include a special subsection describing the presumption that recklessness may be inferred from the act of pointing a gun at a person's head, it would defy logic—and the canons of statutory construction—to assume that the legislature intended such a statutory presumption to apply to the lesser, but not the greater, offense when both require exactly the same "reckless" mental state.

Third, appellant's own testimony showed that he was consciously aware of the risk

---

**16.** *See, e.g., Hirad v. State,* 14 S.W.3d 351, 352 n. 1 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (rejecting defendant's contention that the statutory presumption in § 22.05(c) constitutes an additional element or required fact of the offense of deadly conduct).

**17.** All presumptions in criminal cases must be permissive; mandatory presumptions are unconstitutional in criminal cases. *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213,

60 L.Ed.2d 777 (1979); *Francis v. Franklin,* 471 U.S. 307, 317, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Thus, while a jury *may* infer that evidence beyond a reasonable doubt that a defendant pointed a gun at another person sufficiently proves recklessness, it is not required that a jury do so.

**18.** *Green v. State,* 893 S.W.2d 536, 545 (Tex. Crim.App.1995).

of harm his conduct posed to Daniella, and thus acted recklessly:

Q: And you knew that you had committed a crime, didn't you, just by pointing the gun at Daniella's head?

A: Yes, sir.

Q: And you knew that pointing a gun at someone's head was dangerous, didn't you?

A: Yes, sir.

Q: And you knew that that—that a gun can cause death or serious bodily injury, didn't you?

A: Yes, sir.

Q: And even though you knew that, you disregarded that risk, didn't you?

A: Sort of, sir.

Q: You chose to disregard the risk, didn't you?

A: Sort of, sir.

Q: Even though you knew it was wrong you decided to do it anyway, didn't you?

A: Yes, sir.

Q: Because you were upset?

A: Yes, sir.

Q: And it was—it was—You were conscious about what you were doing? In other words, you knew what you were doing, didn't you? You knew you were pointing a gun at Daniella's head?

A: Yes, sir.

Q: And you knew that you pulled the trigger, didn't you?

A: Yes, sir.

Appellant fully admitted that he had a reckless state of mind and that his conduct resulted in serious bodily injury. His testimony, if believed, established the offense of aggravated assault. It does not matter that appellant may have also believed that the gun was unloaded; he was fully aware of the fact that pointing a gun at someone's head and pulling the trigger is a very dangerous act. It logically follows, then, that there is no evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty *only* of deadly conduct and not aggravated assault.[19]

Therefore, we reject appellant's broad assertion that "[d]ue process of law requires a charge on the lesser included offense of deadly conduct where there is evidence that the actor believed the firearm was unloaded." There might be an instance in which such evidence would require the trial court to give the jury a charge on the lesser-included offense of deadly conduct, but the evidence in this case did not require any such instruction.[20]

19. *Cf. Isaac v. State,* 167 S.W.3d 469, 475 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). In *Isaac,* the court of appeals held that the trial court was required to give an instruction on deadly conduct because the jury could have believed the defendant's denial that he pointed the gun at anyone, and he claimed that the gun discharged only when his stepmother's son charged him and grabbed his hand. *Id.* According to the defendant, he went to his father's barber shop with a gun, but he intended only to scare his family and then to kill himself in front of his father. *Id.* The court of appeals concluded "that appellant's testimony provided some evidence from which a jury could rationally find that, although appellant never intended to threaten his family with imminent bodily injury (a necessary element of aggravated assault), he did recklessly engage in conduct that placed his family in danger of serious bodily injury (as required to prove deadly conduct." *Id.*

20. We note that, even if appellant had been entitled to the requested instruction, any error would be harmless, in light of the jury's rejection of the intervening lesser-included offense of aggravated assault. *See Masterson v. State,* 155 S.W.3d 167, 172 (Tex.Crim.App.2005). There is significant evidence in the record that appellant acted recklessly, rather than

We affirm the judgment of the court of appeals.

KELLER, P.J., filed a concurring opinion.

WOMACK, J., dissented.

KELLER, P.J., filed a concurring opinion.

The defendant was charged with attempted murder, and received an instruction on aggravated assault by causing bodily injury. The question in this case is whether he is entitled to a jury charge on deadly conduct even though his acts actually caused injury to his victim. The San Antonio Court of Appeals, agreeing with two other courts of appeals that had spoken on the issue, held that injury precludes submission of a charge on deadly conduct.[1] As I will explain below, I agree.

### 1. Status as lesser-included

First, though, I mention an incongruity that the reader may notice is implicated but not directly addressed in the Court's opinion. The Court finds that an indictment saying that appellant attempted to cause the death of the victim "by shooting her with a firearm about the head area"

does not require proof that the victim suffered any actual bodily injury. Although the indictment language is somewhat unclear, I agree with the Court in its assessment.

However, this impacts what forms of aggravated assault can be viewed as lesser-included offenses. The only kind of aggravated assault that has "recklessness" as a culpable mental state is aggravated assault that causes bodily injury.[2] Since the State was not required to show bodily injury by this indictment, *reckless* aggravated assault was not in fact a lesser-included offense of the attempted murder charged here.

But appellant did not object to the submission of the aggravated assault charge-a submission that could have been viewed as beneficial to him at the time-and he has not contended at the appellate level that there was any error in its submission. Under these circumstances, I agree with the Court's decision to treat the reckless aggravated assault instruction as if it were properly included within the charge, and I also agree that whether appellant meets the second prong of the lesser-included offense test must be determined by reference to that instruction.[3]

---

with the intent to kill. Therefore, aggravated assault was a realistic option for the jury. The fact that the jury convicted appellant of attempted murder, despite the availability of aggravated assault, indicates that the jury did, in fact, believe that appellant acted with the specific intent to kill Daniella. *See Levan v. State*, 93 S.W.3d 581, 585–86 (Tex.App.-Eastland 2002, pet. ref'd) (omission of charge on criminally negligent homicide harmless in murder trial because jury rejected the intervening lesser offense of manslaughter).

1. *Guzman v. State*, No. 04–03–00548–CP, 2004 WL 2168626, at *1, 2004 Tex.App. LEXIS 8594, *3–4 (Tex.App.-San Antonio 2004)(not designated for publication), citing *Ramirez v. State*, 976 S.W.2d 219 (Tex.App.-El Paso 1998, pet. ref'd) and *Graham v. State*,

950 S.W.2d 724, 731 at n. 2 (Tex.App.-Beaumont 1997)(opinion withdrawn and appeal permanently abated at 976 S.W.2d 913 (Tex. App.-Beaumont 1998)).

2. *See* Tex. Pen.Code § 22.02(a)(incorporating elements of assault into aggravated assault); § 22.01(a)(culpable mental state of "recklessly" constitute an element of assault that causes bodily injury; other theories of assault contain only the "intentionally" and "knowingly" mental states).

3. Of course, even if submission were viewed as error, appellant was not harmed. By convicting appellant of attempted murder, the jury rejected the lesser offense of aggravated assault. Although the indictment may not have required the State to prove it, the evi-

## 2. Guilty *only* of the lesser offense

Under the second prong of the test, some evidence in the record must indicate that, if the defendant is guilty, he is guilty only of the lesser offense.[4] The State has contended that "if injury actually occurs ... the act of shooting towards the victim constitutes more than deadly conduct."[5] Citing *Hayes v. State*[6] and two court of appeals cases, the Court responds, "While deadly conduct is generally aimed at capturing conduct that falls short of harming another, we cannot say that all shootings resulting in death or injury are inevitably and necessarily beyond the scope of the offense of deadly conduct."

*Hayes* does indeed support the Court's contention, but the reasoning in that case is incomplete and the holding conflicts with other caselaw. In *Hayes*, the defendant was convicted of aggravated assault by shooting the victim with a gun.[7] He complained about the trial court's refusal to instruct the jury on the lesser offense of "reckless conduct" (now "deadly conduct").[8] Noting that the case involved "remarkably similar facts" to those found in *Thomas v. State*,[9] this Court held that the evidence raised the culpable mental state of recklessness.

In *Thomas*, the defendant was indicted for murder.[10] He requested an instruction on the lesser offense of criminally negligent homicide.[11] This Court held that he was not entitled to that instruction because, at best, the evidence showed he was aware of the risk of death, and so he was at least reckless, which might have entitled him to a charge of involuntary manslaughter, but not to a charge of criminally negligent homicide.[12]

The *Hayes* court's reliance upon *Thomas* overlooks a fundamental difference between the two cases. The issue in *Thomas* was not whether the evidence raised the culpable mental state of recklessness; it was whether the evidence raised the culpable mental state of criminal negligence. The Court rejected the defendant's contention because the evidence, at best, raised only the culpable mental state of recklessness, a *higher* culpable mental state than criminal negligence. So in that respect, *Thomas* is similar to other cases holding that a defendant is not entitled to an instruction on a particular lesser-included offense when the evidence relied upon indicates that he committed an offense greater than the one for which an instruction was requested.

Our recent cases support the State's contention here. In *Forest v. State*, the defendant was charged with intentional murder under Texas Penal Code § 19.02(b)(1),[13] and he requested an in-

---

dence indisputably showed that the victim had suffered (at least) bodily injury. That means the jury's rejection of aggravated assault necessarily meant that it rejected the claim that appellant acted with a "reckless" culpable mental state—defeating the rationale for obtaining a conviction on the lesser offense of deadly conduct.

**4.** *Hayward; Rousseau.*

**5.** *See* Court's op. at 190 n. 10.

**6.** 728 S.W.2d 804, 809–810 (Tex.Crim.App. 1987).

**7.** 728 S.W.2d at 805.

**8.** *Id.* at 809; *see* Tex. Pen.Code § 22.05 (named changed effective Sept. 1, 1994).

**9.** *Id.* at 809–810 (discussing *Thomas v. State*, 699 S.W.2d 845 (Tex.Crim.App.1985)).

**10.** 699 S.W.2d at 847.

**11.** *Id.*

**12.** *Id.* at 849–852.

**13.** 989 S.W.2d 365, 368 (Tex.Crim.App.1999).

struction on the lesser offense of aggravated assault.[14] We held that he was not entitled to an instruction on aggravated assault because the evidence (even his own testimony) showed that he was at least guilty of "intent to commit serious bodily injury" murder under § 19.02(b)(2).[15] The *Forest* decision relied upon this Court's prior decision in *Harrell v. State*, which held the same thing.[16]

In *Jackson v. State*, the defendant was charged with capital murder, and he requested an instruction on aggravated assault.[17] He claimed he was entitled to this instruction because there was some evidence to indicate that he recklessly committed serious bodily injury.[18] We agreed that there was a factual dispute about whether the defendant acted intentionally or recklessly, but we pointed out that there was no evidence that the victim suffered a lesser form of bodily injury than "death." [19] Consequently, the evidence of a reckless killing indicated that the defendant was at least guilty of "manslaughter, an offense which lies between murder and aggravated assault." [20] Relying upon *Forest*, we said, "A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide."

Our opinion in *Hayes* conflicts with (and did not discuss) our earlier decision in *Harrell*, and it also conflicts with our later decisions in *Forest* and *Jackson*. Because the defendant in *Hayes* actually shot the victim, evidence of recklessness indicated merely the commission of a different form of aggravated assault, and therefore, there was no evidence that he was guilty only of reckless conduct.[21]

Under *Harrell*, *Forest* and *Jackson*, the rule the State proposes follows logically from the elements of aggravated assault and misdemeanor deadly conduct.[22] Misdemeanor deadly conduct is committed if the defendant "recklessly engages in conduct that places another in imminent danger of serious bodily injury." [23] If, in committing that offense, the defendant inflicts *serious* bodily injury, there can be no question that he has at least committed aggravated assault by recklessly inflicting serious bodily injury.[24] That being so, the evidence cannot support a rational inference that the defendant is guilty only of deadly conduct.[25]

Although less obvious, it is also true that inflicting *bodily* injury while engaging in an act that places the victim in danger of serious bodily injury constitutes the offense of aggravated assault by recklessly inflicting bodily injury and using a deadly

14. *Id.* at 367.

15. *Id.* at 368.

16. *Id.* (discussing *Harrell*, 659 S.W.2d 825 (Tex.Crim.App.1983)).

17. 992 S.W.2d 469, 474–475 (Tex.Crim.App. 1999).

18. *Id.* at 475.

19. *Id.*

20. *Id.*

21. *See Forest*, 989 S.W.2d at 368 (defendant not entitled to an instruction on aggravated

assault when "there was no evidence that [he] was guilty only of anything less than some form of murder").

22. I express no opinion regarding the applicability of the rule to felony deadly conduct, involving the intentional discharge of a firearm. *See* § 22.05(b).

23. § 22.05(a).

24. § 22.02(a)(1)(incorporating § 22.01(a)(1)).

25. *See Ramirez v. State*, 976 S.W.2d at 227.

weapon.[26] This is so because the definition of deadly weapon encompasses *"anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."* [27] Our cases have made clear that "anything" means *anything*.[28] An act that places someone in danger of serious bodily injury (relied upon to establish deadly conduct) necessarily entails using something that, in its manner of use, is capable of causing serious bodily injury—and so establishes the use of a deadly weapon.[29]

The Court also observes that "there is nothing in the statute which expressly or even implicitly limits prosecution (or conviction) for the offense of deadly conduct to only that conduct which threatens, but fails, to cause injury to another." I believe that this observation misses the point. Certainly the State could choose to charge conduct that inflicts injury as deadly conduct rather than aggravated assault, just as the State could choose to charge conduct that inflicts serious bodily injury as a simple assault rather than an aggravated assault.[30] The question is not whether the State could have prosecuted deadly conduct in the first instance but whether a party is entitled to the submission of deadly conduct as a lesser-included offense in the face of a fact that necessarily raises an offense greater than deadly conduct.

I would hold that, when a defendant is charged with committing an act that causes bodily injury—e.g., aggravated assault—the second prong of the lesser included offense test is never met when the

evidence that the victim was injured is undisputed. Because that is the case here, I agree that appellant was not entitled to the instruction. I therefore concur in the Court's judgment.

---

**26.** *See* § 22.02(a)(2)(incorporating § 22.01(a)(1)).

**27.** Tex. Pen.Code § 1.07(a)(17)(emphasis added).

**28.** Deadly weapons can include cars (*Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005)), fists (*Lane v. State*, 151 S.W.3d 188, 190 (Tex.Crim.App.2004)), chains, belts, and locks, (*Hill v. State*, 913 S.W.2d 581, 582–583 (Tex.Crim.App.1996)) and hot water (*Gilbert v. State*, 769 S.W.2d 535, 536–537 (Tex.Crim. App.1989)).

**29.** *See McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000).

**30.** *Compare* Tex. Pen.Code § 22.02(a)(serious bodily injury); § 22.01(a)(bodily injury).