**AFFIRMED and Opinion Filed December 19, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00479-CR**

**GREGORY BERNARD WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1875904-H**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Carlyle

A jury found appellant Gregory Washington guilty of murder and sentenced him to 25 years of confinement. Washington's appeal raises seven issues addressing the legal sufficiency of the evidence, the jury charge, and cumulative error. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Washington testified that after a confrontation with several people near Vermettya Thomas's home on Buckskin Drive in Dallas, he was standing outside speaking with her when shots were fired at both of them from someone in the street. Washington testified he returned fire towards a cul-de-sac and that there were houses

and people in the cul-de-sac. The decedent, Donald Little, was in the direction of the cul-de-sac facing Washington at the time he was shot in the chest. Washington said he then saw a second set of shots coming from the area of a green electrical box. He returned fire towards the second shots, departed in his vehicle, and did not return despite requests from his girlfriend and law enforcement. Washington admitted disposing of his firearm, not turning himself in because he was scared, and being arrested three months later.

Vermettya Thomas testified Washington was her daughter's boyfriend, that she watched Washington get out of his stopped car with a gun in his hand, and that she ducked after hearing gunshots. She then saw Donald Little lying in the street and ran over to him, but he died in her arms. Ms. Thomas testified that she believed Washington fired the first shots because she heard gunfire immediately after he got out of his car with a gun and that when he did so, he was the only one brandishing a weapon.

David Todd, a veteran who served in the United States Marine Corps from 1997 until 2005, was Vermettya Thomas's neighbor. He testified that when he heard shots being fired, he was carrying a .40-caliber Taurus P-720. He took cover near a green utility box, saw one person down in the road, "returned fire more as drawing fire" to prevent the shooter from shooting at others, including children in the cul-de-sac, and saw the shooter run over the person in the road as he fled in his vehicle. Todd was shot in the process, blacked out, and required medical attention.

Laquala Specks testified that she watched Washington get out of his car, raise his gun, and start shooting towards the cul-de-sac. She also testified that he was the first person to start shooting and that he was the only person she saw with a gun.

There were at least three guns that were firing shots: (1) David Todd's Taurus .40 caliber, (2) Washington's Springfield 9mm, and (3) a second 9mm of unknown type fired by an unknown person. The State produced evidence that Little died from gunshot wounds and confirmed Washington's testimony that Little was located between Washington and the cul-de-sac at the time he was shot.

**The evidence sufficiently supports the conviction.**

In his first two issues, Washington argues that the evidence is insufficient to support his conviction and to prove he shot and killed Donald Little. We review evidentiary sufficiency under the familiar *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 894, 901–02 (Tex. Crim. App. 2010). We review all the evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Murphy v. State*, No. 05-19-00886-CR, 2020 WL 7396009, at *1 (Tex. App.—Dallas Dec. 17, 2020, no pet.) (mem. op.).

Washington admitted that he fired his weapon at what he described as the first shooter and that he did so before becoming aware there was a second shooter. Other witnesses testified Washington was the first one to display a gun, that he was the first one to fire a gun, that he was shooting towards the cul-de-sac, that he fired in

Little's direction, that Little laid in the street dying after Washington started firing, that Todd was also firing, and that Todd did not shoot Little.

Washington also admitted that he left the scene, did not return despite requests from his girlfriend and law enforcement, and disposed of his firearm. When read in connection with the foregoing facts, these acts constitute circumstantial evidence from which a jury could have rationally concluded Washington was conscious of his guilt. *See Rider v. State*, No. 05-20-00220-CR, 2022 WL 1769116, at *3 (Tex. App.—Dallas June 1, 2022, no pet.) (mem. op.).

Based on this evidence and the reasonable inferences therefrom, a jury could have rationally found that Washington intentionally caused Little's death, knowingly caused Little's death, intended to cause serious bodily injury to Little and committed an act clearly dangerous to human life that caused Little's death, and committed the felony offense of deadly conduct and in the course and furtherance thereof committed an act clearly dangerous to human life.

We overrule Washington's first and second issues.

**The trial court did not err when it denied Washington's request for an instruction concerning self-defense against multiple assailants.**

In his third issue, Washington argues the trial court erred when it denied his request for a Pattern Jury Charge instruction concerning self-defense against multiple assailants. The State counters that the trial court did not err because there is

no evidence multiple assailants were acting together. *See Jordan v. State*, 593 S.W.3d 340, 344 (Tex. Crim. App. 2020).

We agree with the State that the trial court did not err, but for a different reason supported by the record. Washington testified that two minutes into his conversation with Ms. Thomas:

> [S]hots were fired at us. Me and the mother, we dive, and we hit the ground, and I returned fire once I got back up . . . . After I ducked, and me and the mom ducked, I rise up and I shoot . . . [i]n self-defense. Someone was shooting at me . . . After the shooting stopped for a second, and I look up again, and I see flashes coming from a green generator box of sort . . . I returned fire to that location, and I got in my car, and I drove off.

The jury heard Washington admit that he fired on his initial attacker before Todd began drawing fire from the electrical box. Todd's testimony—that he did not fire his weapon until after the first shots were fired—corroborates the operative portion of Washington's testimony.

Thus, even when viewed from Washington's standpoint, there is no evidence that would have permitted him to reasonably conclude he was under attack from multiple shooters at the time he fired his first volley of shots. *See Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985). Thus, the trial court did not err when it declined to give him a Pattern Jury Charge instruction concerning self-defense against multiple assailants.

**Washington is not entitled to appellate relief based on the absence of an instruction on the lesser-included offense of deadly conduct.**

In his fourth issue, Washington challenges the trial court's ruling that he was not entitled to a lesser-included instruction on deadly conduct. *See* TEX. PENAL CODE § 22.05(b)(1)–(2).[1] The State agrees that section 22.05(b) deadly conduct can be a lesser-included offense of felony murder as alleged here. *See Guzman v. State*, 188 S.W.3d 185, 191 n.11 (Tex. Crim. App. 2006) (rejecting State's argument that defendant not entitled to deadly conduct instruction when injury actually occurs from his deliberate shooting towards victim);[2] *Ortiz v. State*, 144 S.W.3d 225, 232–34 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

We next "consider whether the evidence shows that if the Appellant is guilty, he is guilty only of the lesser offense." *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). To that end, there must be affirmative evidence that both raises only deadly conduct and rebuts or negates an element of murder. *See id.* at 385. Evidence that merely supports speculation in that analysis does not suffice. *See id.* No evidence from any witness but Washington arguably could meet this burden, and thus we focus on Washington's testimony.

Before doing so, however, we must also discuss trial counsel's request for the lesser: "Judge, I am saying to the Court, if the Court finds that a prima facie case has

---

[1] Washington did not request an instruction on section 22.05(a) deadly conduct and has preserved no complaint on that basis. *See* TEX. R. APP. P. 33.1.

[2] The question before the Court of Criminal Appeals in *Guzman* was whether a defendant is entitled to an instruction on deadly conduct if the evidence shows he intentionally pulled the trigger on a gun he believed was unloaded, there, because he took the clip off the gun. *See Guzman*, 188 S.W.3d at 186. Too, the court was only considering section 22.05(a) deadly conduct, which required only a reckless mental state. *Id.* at 189 & n.5.

been shown as to Mr. Washington being guilty of deadly conduct, then that is the basis for our request for a jury charge on that topic. If the Court finds no evidence before this jury as to Mr. Washington being guilty of deadly conduct, I will ask the Court to so instruct the jury as to acquit him as to that alternative means of charging him." Counsel only requested the court instruct the jury on deadly conduct as a lesser of felony murder. With that limiting predicate, we consider the evidence.

Washington claimed he used deadly force in self-defense when shooting at Little. ("Q. Why did you shoot? A. In self-defense. Someone was shooting at me."). Washington was clear he perceived that Little stood in front of him in the direction he first fired shots after he rose up from behind the car, shooting in what he described as self-defense. By definition, deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *See* TEX. PENAL CODE § 9.01(3). Washington made no claim that he lacked the intent to hit someone with his shots.

As an initial matter, this testimony presents nothing "directly germane to recklessness." *See Cavazos*, 382 S.W.3d at 385. Shooting at a known target in self-defense multiple times does not rationally support an inference Washington acted recklessly at the moment he fired the shots. *See id.* Washington also testified on cross-examination that he fired his first shots back toward the cul-de-sac and agreed he knew there were houses and people in the cul-de-sac. This evidence establishes a mental state above recklessness and eliminates any chance of error from denying

deadly conduct as a lesser based on Washington acting with recklessness as to whether a habitation, building, or vehicle is occupied. *See* TEX. PENAL CODE § 22.05(b)(2).

We are left to consider whether there is affirmative evidence that both raises the possibility that Washington committed deadly conduct by "knowingly discharg[ing] a firearm at or in the direction of: (1) one or more individuals," *see id.* 22.05(b)(1), and rebuts or negates an element of murder. *See Cavazos*, 382 S.W.3d at 385. By his confession-and-avoidance claim, Washington admits committing an "act clearly dangerous to human life," "one that creates a substantial risk of death." *See Buchanan v. State*, No. 08-06-00203-CR, 2008 WL 3585900, at *2–3 (Tex. App.—El Paso Aug. 14, 2008, no pet.). Instead of negating an element of murder, Washington's evidence satisfies it, at least in part, and that part goes beyond the proof required for (b)(2) deadly conduct.

Washington does not argue he thought the gun was unloaded. To the contrary, his testimony establishes he believed the gun was loaded. *See Guzman*, 188 S.W.3d 185 n.11. Asserting self-defense here eliminates the possibility that he merely committed deadly conduct and Washington points to no other evidence establishing he is only guilty of deadly conduct. His lack of knowledge is not affirmative evidence and does not negate any element of felony murder. *See Hamilton v. State*, 563 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Washington points to no direct evidence he did not cause Little's death, relying only on

speculation to support a claim that his shots failed to cause Little's death. *See Cavazos*, 382 S.W.3d at 385 (evidence must be directly germane to the lesser-included offenses and must rise to a level that a rational jury could find that if he is guilty, he is guilty only of the lesser; "meeting this threshold requires more than mere speculation"). Because nothing in the evidence otherwise shows that if Washington was guilty he was guilty only of deadly conduct, we reject this issue.

**The absence of a limitation on the word "knowingly" in the jury charge did not cause egregious harm.**

Construed liberally, Washington's fifth issue argues the trial court's failure to limit the definition of "knowingly" in the jury charge caused him egregious harm because it permitted the jury to convict him of knowingly engaging in conduct that caused Little's death rather than intentionally causing Little's death. Intentional murder is a result-of-conduct offense and it is error not to limit the definitions of the culpable mental states to the conduct elements of intentional murder. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *see also id.* at 492–94 (Maloney, J., concurring) (foreseeing "the complications that can be expected when the majority's opinion" regarding a trial court's refusal to limit the definitions of the applicable culpable mental states to the result of appellant's conduct "is applied to an offense that contains more than one 'conduct element'"). Washington did not raise this objection at trial. Thus, he is not entitled to appellate relief unless the court's

instructions caused him egregious harm. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

"Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make the case for conviction clearly and more significantly persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). This is "a difficult standard to prove." *Id.* at 489. When determining whether egregious harm exists, we examine (1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments, and (4) any other relevant information revealed by the record of the trial as a whole. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

> The abstract portion of the jury charge instructed the jury that:
>
> A person commits the offense of murder when he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, or commits a felony offense and while in the course of and in furtherance of the commission of the felony offense, commits an act clearly dangerous to human life that causes the death of an individual.

It also further defined "knowingly":

> A person acts "knowingly", or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. A person acts "knowingly", or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist.

We assume for the purposes of this analysis that these instructions were erroneous.

When assessing harm caused by the erroneous inclusion of improper conduct elements in the definitions of culpable mental states, we may "consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Cook*, 884 S.W.2d at 492 n.6. Here, the application paragraph instructed the jury that it was to convict Washington if it found beyond a reasonable doubt that he (1) intentionally or knowingly caused Little's death,[3] (2) intended to cause serious bodily injury to Little and committed an act clearly dangerous to human life that caused Little's death, or (3) committed the felony offense of deadly conduct and in the course and furtherance thereof committed an act clearly dangerous to human life. These application instructions are correct and there is no argument to the contrary. "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Cherry v. State*, No. 05-94-00965-CR, 1995 WL 730934, at *4 (Tex. App.—Dallas Dec. 11, 1995, no pet.) (mem. op., not designated for publication).

Furthermore, Washington's complaint concerning the definition of "knowingly" implicates only one of the four manners and means of committing

---

[3] Specifically, the relevant application paragraph read: "Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about 28th day of June, 2018, in Dallas County, Texas, the defendant, GREGORY BERNARD WASHINGTON, did unlawfully then and there intentionally or knowingly cause the death of DONALD RAY LITTLE, an individual, hereinafter called deceased, by shooting deceased with a firearm, a deadly weapon . . . . then you will find the defendant guilty of murder as charged in the indictment."

murder that were presented to the jury. *See* TEX. PENAL CODE § 19.02(b)(1)–(3). This significantly reduces the potential avenues through which egregious harm can manifest. Given the legal sufficiency of the evidence to support the jury's verdict under each of the other three manners and means, the limitation of harm to one half of Texas Penal Code section 19.02(b)(1) weighs against—but does not completely eliminate—a finding of egregious harm.

The record supports the conclusion that while Washington had the opportunity to leave the scene in his car, he instead stopped, stepped out of his car brandishing a firearm, intentionally shot at Little, and was not defending himself at the moment he pulled the trigger while aiming in Little's direction. The record further shows that after Little was fatally struck by a bullet, Washington fled, refused to return to the scene, and disposed of his firearm. Together, this evidence supports the jury's verdict via each of the other three manners and means in the charge and weighs against a finding of egregious harm.

Additionally, Washington used a firearm, which is a dangerous weapon per se. TEX. PENAL CODE § 1.07(a)(17)(A). Washington used his firearm in a deadly manner. Thus, the inference is almost conclusive that Washington intended to kill. *See Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993). Under the circumstances, this near conclusivity weighs against a finding of egregious harm because it allowed the jury to convict Washington of intentionally murdering Little under the other half of Texas Penal Code section 19.02(b)(1) and we have already

concluded the evidence is legally sufficient to support the jury's conviction thereunder. This also weighs against a finding of egregious harm.

During voir dire, the State used the word "knowingly" once[4] and Washington mentioned it twice;[5] these uses do not weigh in favor of finding egregious harm. Neither the State nor Washington mentioned the word "knowingly" during opening statements. During closing argument, the State said:

> Ladies and gentlemen, whether you believe he intentionally or knowingly killed the complainant, whether he intentionally or knowingly committed an act clearly dangerous to human life that could have caused serious bodily injury or death, or whether you believe that he was committing deadly conduct by shooting into that cul-de-sac full of people, and then and there committed an act clearly dangerous to human life, which is firing that weapon unnecessarily, and that that caused the complainant's death, each and every one of those is murder. It's murder; it's murder; it's murder. He is guilty of murder.

The State's argument that Washington was guilty of murder "whether he intentionally or knowingly committed an act clearly dangerous to human life" was

---

[4]    "[The State]: Now we're gonna go over murder. There are several different ways that somebody can commit a murder under the criminal code. The first one is going to be intentionally and knowingly causing the death of an individual."

[5]    First: "A couple of other things. The government put two different ways in the indictment that they are trying to prove their case. One is what I will call a traditional way of accusing somebody of murder. Accusing them of intentionally or knowingly committing some act clearly dangerous to human life and causing the death of someone else as a result of that. That is the normal way that the government accuses someone of committing murder; intentionally or knowingly committing some act that is clearly dangerous to human life, and as a result of that act, somebody died."

Second: "In this case, the government also is trying the case as a felony murder; that is, if you were to find beyond a reasonable doubt that Mr. Washington committed the felony of deadly conduct, and as a result of that, someone lost their life. In this case, and this is just me saying my personal opinion, which isn't the law and isn't binding on you. It's just some lawyer up here talking, but I suspect in this case, the two of them end up being real similar to each other. The bottom line is that the jury will receive the law from the Judge at the end of this, and they may or may not end up being the same thing."

not entirely harmless as it encouraged the jury to convict based on something other than the results of his conduct. The State's singular use of this argument does not heavily weigh in favor of finding egregious harm, particularly when viewed in light of the jury instructions and the state of the evidence.

Finally, Washington argued the jury should find him not guilty based on self-defense. As a confession-and–avoidance defense, self-defense "requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense." *Penning v. State*, No. 03-14-00579-CR, 2016 WL 4628052, at *3 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op.). By arguing self-defense, Washington is arguing that his actions were justified. *Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011). Under the circumstances, Washington's argument to the jury that he justifiably used deadly force in self-defense made it unlikely that the jury would have convicted him of knowingly engaging in conduct that caused Little's death rather than intentionally causing Little's death. Although not dispositive alone, Washington's invocation of self-defense weighs against a finding of egregious harm.

After examining the jury charge, the state of the evidence, counsels' arguments to the jury, and the record as a whole, we conclude the trial court's presumed error did not cause Washington egregious harm because it did not affect the very basis of the case, deprive him of a valuable right, vitally affect his defensive

theory, or make the case for conviction clearly and more significantly persuasive. *Taylor*, 332 S.W.3d at 490.

**The trial court did not err when it refused to give an "apparent danger" instruction.**

In his sixth issue, Washington challenges the trial court's ruling that denied him an instruction on apparent danger. However, it is "only error to refuse to give an 'apparent danger' instruction in cases in which the jury was not otherwise fully instructed on the law of self-defense." *Rider*, 2022 WL 1769116, at *3. Here, the trial court instructed the jury that it was to find Washington not guilty if it found from the evidence or had a reasonable doubt that he "reasonably believed that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by [the decedent] or others[.]" Thus, the jury was fully instructed concerning the law of self-defense. *See* TEX. PENAL CODE § 9.32(a).

The trial court also properly defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *See Richardson v. State*, 906 S.W.2d 646, 649–50 (Tex. App.—Fort Worth 1995, pet. ref'd) (where an identical instruction "properly advised the jurors on the law of self-defense"). This Court has previously recognized the significance of a trial court's proper instruction and definition of "reasonable belief" in a jury charge. *See Rider*, 2022 WL 1769116, at *3. Therefore, the jury was effectively

instructed on the concept that "a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *Id*. Thus, the trial court did not err when it denied Washington an apparent danger instruction.

**The trial court did not commit multiple errors that denied Washington a fair and impartial trial.**

In his seventh issue, Washington argues the trial court's errors concerning the jury charge caused him to be denied a fair and impartial trial. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). After presuming two non-reversible errors, finding no others, and concluding one presumed error did not cause egregious harm, we conclude the record does not contain "multiple errors [that] synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict." *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in the refusal of appellant's petition) (cleaned up). Thus, the cumulative error doctrine is not implicated.

*          *          *

Having overruled each of Washington's seven issues, we affirm the judgment of the trial court.

220479f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

GREGORY BERNARD
WASHINGTON, Appellant

No. 05-22-00479-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1875904-H.
Opinion delivered by Justice Carlyle.
Justices Smith and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 19th day of December, 2023.