# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00395-CR

**Pauline Faye Jones, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NO. 60315, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Pauline Faye Jones guilty of aggravated assault with a deadly weapon. Tex. Penal Code Ann. § 22.02 (West Supp. 2007). The court sentenced her to twenty years' confinement. In four points of error, Jones argues that the trial court erred when it (1) denied her the right to impeach a witness, (2) denied her the right to present evidence, (3) refused to allow her to present a witness for her defense, and (4) refused her request for an instruction on a lesser-included offense. We overrule Jones's points of error and affirm the judgment of the trial court.

## BACKGROUND

On the evening of July 5, 2006, Killeen Police Department Officers Roderick Mack and Jose Luna were dispatched to the residence of Monica Poole in response to a 911 call. Poole, who shared the residence with her boyfriend, Tommy Parker, and his sister, Pauline Jones, informed the 911 dispatcher that she had been stabbed by Jones.

En route to the residence, the 911 dispatcher advised the officers that Jones was walking away from the residence, and that Poole had described her as a black female wearing a blue shirt and blue jeans. Luna, assisted by another officer, identified and stopped Jones based on Poole's description. Luna testified that when he questioned Jones about the 911 call, she told him that nothing had happened. Luna further testified that the officer assisting him searched Jones's bag with her consent and found an envelope containing two small razor blades. Luna observed that the razor blades did not appear to have blood on them. Jones was arrested for aggravated assault with a deadly weapon.

Mack testified that when he arrived at the residence, a hysterical Poole was coming out of the house with a blood-soaked towel wrapped around her left arm. Mack took Poole back inside the residence and observed a three to four-inch gash on her left outside forearm, although he did not notice any blood stains on Poole's clothing. Mack further testified that Poole said repeatedly that Jones had stabbed her. Inside the house, Mack noticed a bar stool knocked over onto the floor and some blood stains on the tile foyer area. Poole told him that she and Jones had been arguing and that Jones threw the barstool at her; she was trying to block the barstool when Jones cut her with a razor.

Luna testified that when he arrived on the scene after arresting Jones, Poole indicated to him that Jones had cut her after an argument "got out of hand." EMS then took Poole to the hospital where she received 12 staples for the laceration.

Detective Gillman, who took over the investigation at the hospital, testified that he observed a two to three-inch laceration to the outside of Poole's left forearm, a location consistent

2

with a defensive-type wound. While at the hospital, Poole filled out a form and provided her written statement to Gillman, indicating both in her written statement and orally to Gillman that Jones had cut her.

At trial, Poole testified about the events of the day leading up to the assault. She testified that while at home, she had seen Jones smoking crack-cocaine with some friends in the kitchen, stating, "I told [Jones] she couldn't be doing that." Poole then called Tommy Parker, her boyfriend and Jones's brother, to tell him about Jones's activities, leading Parker to come home and speak with Jones briefly before returning to work.

Poole further testified that later that same day, she saw Jones sitting on the couch with the door open and told her to shut the door because the air-conditioning was running. According to Poole, Jones refused and pulled out a white pearl-handle razor. A few minutes later, Jones picked up the bar stool and threw it at the television, then approached Poole with the other bar stool. Poole testified, "Next thing I know—whack," and that she saw the wound on her arm before feeling any pain. Poole called Parker to tell him what had happened, then called 911 to report the incident and provide a description of Jones.

Parker, noting that he was in an awkward position because Jones was his sister and Poole was his "girl," testified that Poole had called him after the incident and informed him that Jones had cut her. Paulette Thompson, Jones's twin sister, also testified. She explained that Jones had mental and drug issues and stated that, on the day of the assault, Jones called and informed her that there had been an altercation.[1] Thompson testified that she told Jones to leave the house and promised to come pick Jones up.

---

[1] Thompson testified that Jones has been medically diagnosed with schizophrenia.

After both the State and Jones had closed their evidence and rested, defense counsel asked to proffer the testimony of Edna Mourell, a friend of the Jones family. Though she was present in the courtroom during the trial, the trial court permitted counsel to question Mourell, despite the violation of "the rule." Outside of the jury's presence, Mourell testified that she was a registered nurse who has treated mental patients with self-inflicted wounds. She indicated that, based upon viewing photographs of Poole's laceration, she would testify that the wound could have been self-inflicted. After inquiring into Mourell's qualifications, the trial judge concluded that Mourell did not qualify as an expert and denied defense counsel's request to present her as a witness.

## DISCUSSION

*Cross-Examination*

In her first point of error, Jones argues that she was denied the opportunity to impeach Poole on cross-examination with an "allegation that she had fabricated a story that led to the arrest of Tommy Parker."[2] Jones argues that the defense should have been allowed to introduce extrinsic evidence of Poole's bias and character for truthfulness. At trial, Jones sought to show that Poole had made an allegation that Parker threatened her with a machete ten days prior to trial but continued to live with him—evidence Jones asserts would "affect [Poole's] credibility and her ability to testify." Jones argued that questioning Poole about the allegation would show that she "has a tendency to make allegations that don't have substance," and that she overdramatizes certain events for attention. The trial court denied Jones's requested line of questioning, noting that the evidence was not

_____

[2] Jones also makes this claim as part of her second point of error.

4

relevant.[3] On appeal, Jones claims that because Parker was "appearing [at trial] on behalf of his sister . . . this [allegation] would go to bias." Furthermore, Jones claims that Poole "would file false charges to get her way," supporting Jones's theory that "the wound was self-inflicted because Monica Poole wanted [Jones] out of the home."

We review the trial court's decision to limit cross-examination under an abuse-of-discretion standard. *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App. 1996). A trial court has broad discretion to limit cross-examination that is only marginally relevant, *Carroll v. State*, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996), and the appellant bears the burden of demonstrating the relevance of the proffered evidence, *Chambers v. State*, 866 S.W.2d 9, 26-27 (Tex. Crim. App. 1993). Here, the questions proposed for Poole on cross-examination related to whether or not she had falsely accused a third party (Parker) in an unrelated matter that occurred ten days prior to trial—almost a full year after the events that gave rise to the current prosecution.

Furthermore, cross-examination as to specific instances of conduct of a witness, other than the conviction of a crime, may not be offered for the purpose of attacking or supporting the witness's credibility. *See* Tex. R. Evid. 608(b). Jones acknowledged that she intended to cross-

---

[3] While the State contends that Jones "never advised the court of specific questions that [s]he proposed to ask the witness, nor did [s]he make a record of what her answers would have been," we note that such a showing is not necessary to preserve error when a defendant wishes to question a State's witness about a certain general subject that might affect the witness's credibility. *See Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987) (holding that when trial court excludes evidence affecting credibility of witness testimony, defendant may preserve error merely by establishing general subject matter of desired cross-examination and, if challenged, why such evidence should be admitted); *see also Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). Because the record reflects that Jones established the general subject matter about which she desired to examine the witness and made a showing regarding why such testimony should be admitted, error was properly preserved in this case.

examine Poole regarding specific instances of conduct in an attempt to attack Poole's credibility, which is precisely what Rule 608(b) prohibits.

An exception to Rule 608(b) exists for evidence that shows bias or interest. *See Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). However, even if this exception were applicable in the present case, Jones provided no evidence that any allegations Poole made against Parker were actually false, other than defense counsel's argument that "if [Poole] was threatened last week and she slept in [Parker's] bed last night, then there is—was no threat or she's the most forgiving human . . . I've ever seen." The fact that a witness has made allegations against other parties is inadmissible where there is nothing in the record to indicate that the previous allegations were false. *See Palmer v. State*, 222 S.W.2d 92, 95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("A defendant seeking to impeach a witness with evidence of a previous false accusation against a third party must, as a threshold evidentiary matter, produce evidence showing the prior accusation is actually false."); *Tinlin v. State*, 983 S.W.2d 65, 69 (Tex. App.—Fort Worth 1998, pet. ref'd.) ("[E]ven if the evidence could be perceived as evidence establishing a bias or interest, Appellant still failed to produce any proof that the prior accusation was false. Where there is no evidence that the witness made false accusations, any evidence concerning the accusations is inadmissible.").

In light of Rule 608(b) and the fact that Jones presented no evidence that any allegations Poole may have made against Parker were false, we hold that the trial court did not err in denying Jones's request to cross-examine Poole regarding such allegations. Jones's first point of error is overruled.

6

*Presenting Evidence & Witnesses*

In her second and third points of error, Jones complains that "the court erred when [it] denied the appellant the right to present evidence." Specifically, Jones argues that the trial court erred in (1) denying her questioning of Poole on cross-examination and (2) denying her request to present Edna Mourell as a witness. As previously discussed, we have determined that the trial court did not err in denying Jones's requested questioning of Poole. Jones presents no new arguments regarding this issue under her second point of error. Regarding Mourell's testimony, Jones claims Mourell's violation of "the rule" should not have prevented her from testifying and that Mourell should have been qualified to testify as an expert. *See* Tex. R. Evid. 614.[4]

After noting that Mourell was present in the courtroom during trial, the trial court allowed the defense to make a proffer of testimony, despite her violation of "the rule." Mourell testified that she has been a registered psychiatric nurse for ten years and that she has dealt with mental patients who cause self-inflicted wounds. Based solely on pictures of Poole's wound, Mourell testified that due to the location of the wound, it appeared to her that it could have been self-inflicted. After her testimony, the trial court inquired into Mourell's qualifications. Mourell indicated that she has degrees in professional nursing and vocational nursing and that she is currently active as a nurse. She testified that she does not belong to any professional organizations, has not

---

[4] When the trial court invokes "the rule," it excludes witnesses from the courtroom pursuant to Rule 614, which provides in relevant part that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Tex. R. Evid. 614. The purpose of the rule is to prevent the testimony of one witness from influencing the testimony of another. *Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993). After the rule has been invoked, enforcement of the rule is within the trial court's discretion. *Guerra v. State*, 771 S.W.2d 453, 474-75 (Tex. Crim. App. 1988).

held any academic or clinical positions, has not worked on any research projects or authored any papers, and has no specific training for looking at wounds.

After Mourell's testimony, the trial court held that she was unqualified to testify and denied Jones the opportunity to present her as an expert witness. The trial court did not disallow her testimony based on any violation of "the rule," as Jones now argues, but rather held that Mourell was not qualified as an expert witness to testify regarding the cause of Poole's wound.

The admission of expert testimony is governed by Rule 702 of the Texas Rules of Evidence, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. We review the trial court's decision to admit scientific expert testimony under an abuse-of-discretion standard. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). Thus, we will not disturb a trial judge's decision of whether a witness qualifies to testify as an expert absent a clear abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) ("The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion.").

Here, it is clear that Mourell was not qualified to provide a professional opinion as to Poole's wound and whether or not it appeared to be self-inflicted. Although Mourell has degrees in nursing, she has no specific training for looking at wounds or determining whether they are self-inflicted. While Mourell's job as a nurse almost certainly requires some general knowledge of wounds, there is nothing in the record establishing that she was qualified as an expert on self-

8

inflicted wounds by her knowledge, skill, experience, training, or education. We hold that it was not error for the trial court to exclude her testimony as an expert witness. Mourell's second and third points of error are overruled.

*Lesser-Included Offense*

In her fourth point of error, Jones argues that the trial court erred when it refused to instruct the jury on the lesser-included charge of assault. After both sides rested, defense counsel requested that the lesser-included offense of assault be included in the charge because the elements of proof are the same for both aggravated assault and assault except for the determination of the seriousness of the injury. *See* Tex. Penal Code Ann. § 22.02. The State argued that although the elements are the same for both offenses, there must be some evidence in the record that the defendant is guilty of only the lesser-included offense. Because Poole testified that a knife or razor was used, the State argued that nothing in the record indicates that if she was injured, it was not with a deadly weapon. The trial court denied Jones's request for a lesser-included offense instruction in the charge.

A defendant is entitled to the submission of a lesser offense if (1) that offense is included within the proof necessary to establish the charged offense and (2) there is some evidence that would permit the jury to rationally find the defendant is guilty only of the lesser offense. *Solomon v. State*, 49 S.W.2d 356, 368-69 (Tex. Crim. App. 2001). The first prong of the test has been met because assault is a lesser-included offense of aggravated assault. *See* Tex. Penal Code Ann. § 22.02. However, Jones cannot meet the second prong of the test because there was no evidence tending to show that if Jones was guilty, she was only guilty of assault; that is, there is no

9

evidence that the jury could have concluded that Jones committed the assault on Poole but did not use a knife or razor. *See Guzman v. State*, 188 S.W.3d 185, 194 (Tex. Crim. App. 2006) (holding that defendant was not entitled to lesser-included offense instruction where "there is no evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty *only* of [lesser-included offense]").

There was no evidence presented here that would rationally warrant a jury finding that Jones did not use a deadly weapon. The only evidence presented regarding the weapon used was Poole's testimony that Jones cut her with a straight razor and Gilman's testimony that a straight razor is a deadly weapon. It is not enough that the jury might simply disbelieve crucial evidence; there must be some evidence that Jones did not use a deadly weapon. *See Solomon*, 49 S.W.3d at 369. Although Jones argues in her brief that it is possible that the injury occurred when Jones had the stool above her head and was trying to hit Poole, there is nothing in the record to support such a finding. Furthermore, there is no evidence that Jones did not use the straight razor in a manner capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2007) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). Because there is no evidence that the jury could have concluded that Jones committed the assault on Poole but did not use a deadly weapon, we hold that the trial court did not err in refusing to provide a lesser-included offense instruction. *See Moss v. State*, 919 S.W.3d 907, 908-09 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that where victim testified that she was threatened with gun, fact that gun was never found was not sufficient evidence to indicate that deadly weapon was not used). We overrule Jones's fourth point of error.

# CONCLUSION

Having overruled Jones's points of error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 30, 2008

Do Not Publish