**AFFIRM; and Opinion Filed June 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01532-CR

**FELIX HERNANDEZ CISNEROS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-60536-U**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

Appellant Felix Hernandez Cisneros appeals from his conviction for aggravated sexual assault, enhanced by a prior conviction,[1] and accompanying sentence of life in prison. In two issues, appellant contends: (1) the evidence was legally insufficient to support his conviction and (2) the trial court erred when it refused to instruct the jury on the lesser included offense of misdemeanor assault. We affirm.

### Background

Leonra Casares and appellant married in July of 2011.[2] On October 1, 2011, Leonra hosted a garage sale at appellant's cousin's house. Following the garage sale, Leonra went home and wanted to rest because she was tired and did not feel well. Appellant awakened Leonra and

---

[1] Appellant was previously convicted of aggravated sexual assault in 1997.

[2] The record reflects Leonra's divorce from appellant was finalized about one month prior to appellant's trial.

indicated he wanted to go out. Leonra testified she told him she did not want to go out, but appellant insisted.

Appellant and Leonra arrived at a nearby club, Sweetwater, around 9:00 p.m. Appellant ordered a bucket of beer, and they waited for friends that were supposed to meet them there. Leonra testified she still was not feeling well and was tired, which made appellant upset. She stated appellant "kept on drinking and drinking and drinking." Appellant offered Leonra a beer multiple times, but she indicated she did not feel like drinking. Appellant got angry and told her she was going to drink. Leonra explained she ultimately drank three beers that night. When appellant danced with Leonra, he accused her of flirting with the musicians. They left the club around 2:00 a.m. Leonra said she cried because she did not feel well and did not have a good time. She sat in the truck, crying for about ten minutes, when they got home. Appellant went inside, leaving the door unlocked.

Leonra eventually went into their home and started to undress in the bedroom. All of a sudden, she felt a punch on her head. Appellant and Leonra fell onto the bed. Positioned on top of her, appellant hit Leonra on the face multiple times and punched her in the stomach. They fell to the floor as he kept hitting her. Appellant pinned her down where she couldn't move her arms.

While on the floor, appellant removed Leonra's clothes and opened her legs. She tried to push him away, but he put his penis inside her vagina. Appellant had a box cutter and held it to her vagina. Leonra testified, "[h]e kept asking me if I wanted to die and that [he] was going to kill me. He was sorry, but he was going to kill me." Leonra said she thought she was going to die. Appellant also put the box cutter against her neck.

Appellant pulled Leonra from the floor and told her to lean on the bed. When she did, he penetrated her anus with his penis. He then threw her onto the bed and told her to turn around.

When Leonra refused, appellant told her she was "going to die." Appellant pulled her hair, grabbed her arm and tried to force her to turn around. He then got tired and they lay on the bed, but appellant kept his arm around Leonra's neck. With the other hand, he held the box cutter against her neck. Leonra explained appellant was a light sleeper, so every time she tried to move, he would squeeze harder on her neck.

Leonra tried to get up, because she was choking on her own blood. She begged appellant to let her go to the bathroom. When he did, appellant held the box cutter to Leonra's back, while Leonra threw water at herself. Leonra asked appellant to get her something to drink, something for pain and something to wear. He brought her a white t-shirt and panties. Appellant then went into the bedroom, dressed and changed the sheets on the bed. He took Leonra to the bedroom and lay her on the bed and said he knew she would "never forgive [him] for this." Leonra testified she told him "everything was going to be okay."

By this time, it was light outside and appellant left. When he was gone, Leonra got off the bed and grabbed a pair of scissors for protection. She ran out the door and went to her neighbors' home. When she knocked, nobody answered. Leonra turned and pushed the knob, and the door opened. When she entered the neighbors, she said, "Please, please, help me. He's going to kill me. He's going to kill me." She also told them to lock the doors. The neighbors then called the police.

The police arrived five to seven minutes later. She told the officers what had transpired and provided them with appellant's description. An ambulance arrived to transport Leonra to Parkland Hospital. Before she left for the hospital, the police had appellant in custody. Leonra asked for her cell phone, and someone retrieved it from appellant. She called her daughter. Leonra also called appellant's father and sister, telling them appellant had "beat [her] up real bad." She did not tell them about the rape. Leonra testified that, in addition to being raped,

appellant knocked out one of her teeth and she suffered a broken nose, three broken ribs, a fractured wrist and multiple bruises. A rape kit examination was performed at the hospital. Leonra testified she told the police appellant had ejaculated in her anus.

Demetrice Hardeman, a 911 operator for the City of Dallas, testified she received the 911 call in connection with the instant offense. She affirmed that she understood there was an allegation made of "someone being beaten up or threatened." She did not hear an allegation of sexual assault.

Officer George Francis of the Dallas Police Department testified he and his partner were the first officers to arrive at the scene. Francis interviewed Leonra, who stated she "was assaulted" and "was also sexually assaulted by the suspect." Leonra told Francis that "the suspect stated that he wanted to put his dick in her mouth and in her butt." Francis described Leonra as hysterically crying and also bleeding. Francis received appellant's name and description from Leonra. Francis requested the paramedics transport Leonra to Parkland Hospital for a rape kit examination.

Following the interview, officers observed appellant walking down the driveway. Appellant's clothing matched the description of the suspect. The officers walked up to him and asked his name. Appellant was compliant with the officers and was not armed. Officers arrested appellant, who was later charged with aggravated sexual assault.

Dr. Evelyna Alcalen, a physician in the obstetrics and gynecology emergency room at Parkland Hospital, testified Leonra was initially treated for her physical injuries. Later that evening, Alcalen performed a sexual assault examination. Leonra reported she had been penetrated vaginally and anally and that appellant had ejaculated. Leonra also reported that, prior to the instant sexual assault, she had consensual sexual intercourse on September 28, 2011. Leonra further reported she was forced to drink three Bud Lights that night. Alcalen noted the

multiple bruises on Leonra's body and face. There were no findings on the external portion of the pelvic exam. Alcalen testified this was common and that "80 to 90 percent of the time, [she] will find no evidence of bruising, lacerations, anything, any trauma. . . after a sexual assault." She further testified sperm usually move out of the vaginal vault six to eight hours after sex.

Courtney Ferreira, a forensic biologist with the Southwestern Institute of Forensic Science, testified she conducted the DNA testing in the instant case. From the vaginal swab, Ferreira detected Leonra and appellant as DNA contributors. The only DNA profile detected on the anal swab belonged to Leonra.

After the Stated rested, the defense called his sole witness, appellant's cousin. Angela Rangel testified she went to see Leonra at the hospital on October 2. Rangel stated Leonra did not tell her she had been sexually assaulted by appellant. Rangel also testified the allegation of sexual assault did not arise until Leonra's daughter suggested it to Leonra. Rangel admitted she did not know Leonra had told the responding officers that she had been sexually assaulted and that Leonra had been transported to Parkland Hospital to receive a rape kit examination.

The jury found appellant guilty of aggravated sexual assault. Appellant waived a jury for the punishment phase and pled true to the enhancement paragraph, alleging a prior sexual assault. The trial court found the enhancement paragraph true and sentenced appellant to life in prison.

## Analysis

### *Legal Sufficiency*

In his first issue, appellant contends the evidence was legally insufficient to support his conviction for aggravated sexual assault. In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894-95 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We are required to defer to the factfinder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

A person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent, if he uses or exhibits a deadly weapon in the course of the same criminal episode. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(A)(i), (a)(2)(A)(iv). In this case, Leonra testified appellant forcibly penetrated her anus and vagina without her consent, while displaying a box cutter. Leonra stated appellant held the box cutter to appellant's vagina and neck and that appellant threatened to kill Leonra.

Appellant argues the existence of his DNA inside Leonra "was innocently explainable and not proof he sexually assaulted her." We note, however, an aggravated sexual assault conviction is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred. TEX. CODE CRIM. PROC. ANN. art. 38.07(a).

Here, Officer Francis interviewed Leonra immediately following the assault. Leonra told Officer Francis she "was assaulted" and "was also sexually assaulted by the suspect." Leonra

told Francis that "the suspect stated that he wanted to put his dick in her mouth and in her butt." From Leonra's vaginal swab, Ferreira detected Leonra and appellant as DNA contributors. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to convict appellant of aggravated sexual assault. *See id.*; *Jackson*, 443 U.S. at 319. We overrule appellant's first issue.

### *Lesser Included Offense*

In his second issue, appellant argues the trial court erred when it refused to instruct the jury on the lesser included offense of misdemeanor assault. Our first duty in analyzing a jury charge issue is to decide whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). If we find error, we analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* If error occurred and appellant objected at trial, we determine whether the error was "calculated to injure" the appellant's rights, which means there must be "some harm" to the accused resulting from the error. *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

To determine whether the lesser included offense instruction requested by appellant should have been given, we follow a two-step analysis. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (plurality op. on reh'g). The first step asks whether the lesser included offense is included within the proof necessary to establish the offense charged. *McKithan v. State,* 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser included offense. *Ex parte Amador,* 326 S.W.3d 202, 206 n. 5 (Tex. Crim. App. 2010); *Ex parte Watson,* 306 S.W.3d 259, 263 (Tex. Crim. App. 2009); *Hall v. State,* 225 S.W.3d 524, 535–36 (Tex. Crim.

App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09. This step is a question of law. *Hall,* 225 S.W.3d at 535.

The second step is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense, while convicting him of only the lesser included offense. *Guzman v. State,* 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Salinas v. State,* 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The evidence must establish the lesser included offense as "a valid rational alternative to the charged offense." *Segundo v. State,* 270 S.W.3d 79, 91 (Tex. Crim. App. 2008); *see also Rice v. State,* 333 S.W.3d 140, 146 (Tex. Crim. App. 2011). We review all of the evidence presented at trial. *Hayward v. State,* 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005); *Rousseau,* 855 S.W.2d at 673. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Goad v. State,* 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). In determining whether the evidence raises the requested lesser included offense, we do not consider the credibility of the evidence or whether it conflicts with other evidence. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

Here, the indictment provides that, on or about October 2, 2011, appellant did:

> unlawfully then and there intentionally and knowingly cause contact and penetration of the female sexual organ or anus of LEONARA [sic] CISNEROS, hereinafter called the complainant, without the consent of complainant, by means of an object, to-wit: the sexual organ of said defendant, and, in the course of this same criminal episode, said defendant did use and exhibit a deadly weapon, to-wit: a box cutter[.]

During the charge conference in the guilt/innocence phase of trial, the following exchange took place:

> [DEFENSE COUNSEL]: And I also ask the Court for a lesser included of Class A misdemeanor assault.
>
> THE COURT: Based on what?

[DEFENSE COUNSEL]: Based on the testimony of Ms. Cisneros indicating she told people she was beat up, the 911 call only indicated she was beat up. The fact that her injuries, I don't believe, rise to the level of serious bodily injury.

THE COURT: I don't think they had to prove serious bodily injury.

[DEFENSE COUNSEL]: That's why I said Class A misdemeanor. She made allegations Mr. Cisneros punched had her about the head and face and side.

THE COURT: Okay.

[DEFENSE COUNSEL]: I think the fact question obviously is as to whether she was actually sexually assaulted. The physical evidence doesn't seem to match up, so I think the jury could choose to believe, based on what they've heard, that the only thing that occurred was the lesser included offense of Class A misdemeanor assault.

THE COURT: Based on the evidence and the testimony, the Court is going to deny the Defense request for the lesser included of assault.

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a). Aggravated sexual assault, as charged in this case, does not require proof of bodily injury. Evidence of penetration does not constitute evidence of bodily injury. *See Crippen v. State*, 368 S.W.3d 630, 632 (Tex. App.−Eastland 2012, pet. ref'd); *Wilson v. State*, Nos. 12-02-00042-CR, 12-02-00043-CR, 2003 WL 21771766, at *7 (Tex. App.−Tyler July 31, 2003, no pet.) (not designated for publication); *see also McKithan*, 324 S.W.3d at 589. Appellant argues the use or exhibition of a deadly weapon necessarily leads one to the conclusion the weapon was "physically used on Ms. Cisneros." Like the State, we presume appellant is arguing the use or exhibition of a deadly weapon is the functional equivalent of bodily injury. However, this argument has no bearing on the fact that assault-bodily injury requires proof of a fact not required by the charged offense, namely bodily injury. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09. Therefore, assault-bodily injury is not a lesser included offense of aggravated sexual assault as charged in this case. *See Denton v. State*, No. 2-05-044-CR, 2006 WL 2076534, at *5

(Tex. App.−Fort Worth July 27, 2006, pet. ref'd) (not designated for publication); *Wilson*, 2003 WL 21771766, at *7.

We must next determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense, while convicting him of only the lesser included offense. *See Guzman*, 188 S.W.3d at 189. To make this determination, we must evaluate the evidence in the context of the entire record. *Moore v. State*, 969 S.W.2d 4, 6 (Tex. Crim. App. 1998).

In his brief, appellant argues the "jury could have believed Ms. Cisneros was not the victim of a sexual assault and instead found Appellant guilty of a Class A misdemeanor assault." Appellant further argues the "jury could have also disbelieved that Appellant used a box cutter to commit the offense." However, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Rather, there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

Here, Leonra testified appellant penetrated her vagina and anus, while exhibiting a box cutter. Officer Francis testified Leonra stated appellant sexually assaulted her. Leonra's vaginal swab included appellant's DNA. Therefore, we conclude the evidence before us did not permit a rational jury to acquit appellant of the greater offense, aggravated sexual assault, while convicting him of only the lesser included offense, assault-bodily injury. *See Guzman*, 188 S.W.3d at 189. We overrule appellant's second issue.

**Conclusion**

Having overruled appellant's two issues, we affirm the judgment of the trial court.


/David L. Bridges/

DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121532F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FELIX HERNANDEZ CISNEROS, Appellant

No. 05-12-01532-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-60536-U.
Opinion delivered by Justice Bridges. Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of June, 2014.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE