In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00253-CR**
_____

**CLEVERT LEE TYLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 12-14509**

**MEMORANDUM OPINION**

A grand jury indicted Clevert Lee Tyler[1] (Tyler) for "intentionally and knowingly caus[ing] the death of . . . [S.V.], hereafter styled the Complainant, by shooting Complainant with a deadly weapon, to wit: a firearm[.]"[2] A jury convicted

---

[1] Clevert Lee Tyler is also known as Cleveland Lee Tyler.

[2] We identify the victim and family members by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

Tyler of murder and assessed punishment at life in prison. *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2011). Tyler timely filed a notice of appeal. In his first two appellate issues, Tyler challenges the legal sufficiency of the evidence supporting his conviction. In his third issue, he argues the trial court abused its discretion in denying his request for a jury instruction on the lesser-included offense of manslaughter. We affirm.

## The Evidence

Angie Conley, a Beaumont 911 dispatch supervisor, testified that on or about June 12, 2012, she received a call through the 911 system from a person who identified himself as Tyler, and Conley dispatched officers to 1208 Harrison Street in reference to the call. A recording of the 911 call was admitted into evidence and published to the jury. In the recording played for the jury, the caller reported that he had just killed his girlfriend by shooting her "between the eyes with a 9."

Officer Matthew Bean with the Beaumont Police Department testified that on or about the evening of June 12, 2012, he was an officer with the street crimes unit and was dispatched to 1208 Harrison Street in reference to a shooting. Officer Bean testified he came into contact with Tyler in the back yard of the residence and ordered Tyler to the ground for the safety of the officers at the scene. According to Officer Bean, after Tyler complied and was placed in handcuffs, Officer Bean

2

located a pistol on top of the trunk of a vehicle in the driveway area and officers read Tyler his *Miranda* rights. Officer Bean testified that Tyler attempted to direct the officers to the location of the victim's body, but the officers could not discern the directions. According to Officer Bean, Tyler accompanied the officers in a patrol car and guided them to a remote location where the officers located the victim's deceased body face-down in the roadway with blood pooled around her head. Officer Bean testified that he learned from other officers that the victim was S.V.

S.V.'s twenty-five-year-old daughter, J.A., testified that she went to her mother's home in Beaumont on the morning of June 12, 2012, and that at that time her mother lived about a block away from Tyler, whom her mother had been dating for almost a month. According to J.A., she had stopped by her mother's home because her mother was concerned about text messages sent by Tyler. J.A. testified that on that morning her mother seemed nervous and scared of Tyler, and J.A. advised her mother before leaving that she should leave Tyler alone. J.A. testified that after she got home from work that evening, she went to her grandmother's home and received a disturbing call from her sister regarding their mother. According to J.A., she and her grandmother went to S.V.'s home and saw police cars at Tyler's home. J.A. testified she was concerned and went to talk to the police, who asked her

3

to go back home and wait. J.A. testified that she learned from law enforcement later that night that her mother had been a victim of a possible homicide.

S.B., Tyler's niece, testified that Tyler was living with her grandmother at 1208 Harrison Street on or about June 12, 2012, and that S.B. had been at the house all day. According to S.B., Tyler and his girlfriend, S.V., were at the house that day for a couple of hours, and Tyler had told S.B. that he thought S.V. was cheating on him. S.B. testified that she witnessed them talking outside and Tyler was being "stern[]" and "[g]etting that point across." S.B. testified that Tyler seemed "[k]ind of aggravated[,]" and S.V. seemed "[t]imid." S.B. testified that Tyler had a gun in his pants that day, and although she did not remember him pulling the gun out, she acknowledged at trial that in her statement to law enforcement she had reported that Tyler waived a gun in S.V.'s face and then put it back in his pants. According to S.B., Tyler then started drinking beer with a smirk on his face. According to S.B.'s statement, before Tyler and S.V. left, Tyler asked S.V. to go into the bathroom, S.V. looked scared, they argued in the bathroom, S.V. left the bathroom and looked like she was crying, S.V. left the house, Tyler stayed in the bathroom a little longer, and then Tyler also left the house. S.B. acknowledged at trial that at the time Tyler felt like S.B. was taking S.V.'s "side[,]" that Tyler told S.B. that she should be on "his

side[]" because they were family, and S.B. told Tyler that "right is right and wrong is wrong[.]"

Stacie Gardener testified that on June 12, 2012, she was a crime scene technician with the Beaumont Police Department and was dispatched to 1208 Harrison in regards to a victim of a shooting. Video recordings and photos taken by law enforcement of 1208 Harrison after the 911 call and the scene where the body was located were admitted into evidence. She testified that there was a 9mm gun on the trunk of a vehicle "in a driveway that was kind of far back from the house[.]" Gardener testified that Tyler said that between the time he shot S.V. and when the gunshot residue kit had been administered on him he had driven a car, smoked a cigarette, and drank a beer.

Officer Christopher Daniels with the Beaumont Police Department testified that he responded to 1208 Harrison Street and read Tyler his *Miranda* warnings. Daniels testified that his patrol car video system recorded Tyler being transported to where Tyler said the body was located. According to Officer Daniels, Tyler said that he "murdered somebody[,]" he and S.V. had had an argument, and he shot her between the eyes. The patrol car video recording was admitted and played for the jury. Officer Daniels testified that he retrieved a spent 9mm casing from near S.V.'s body.

5

Officer Robert Riley, who was a police officer with the Beaumont Police Department in 2012, testified that he arrived at 1208 Harrison Street after Tyler had been read his *Miranda* warnings. According to Officer Riley, Tyler said he had murdered his girlfriend by shooting her and that he could take the officers to where the body was located, which was about three-fourths of a mile away. Officer Riley testified that Tyler was taken to the Beaumont Police Department to speak to detectives and that he appeared calm during the recorded interview. According to Officer Riley's report, Tyler stated that when he realized he had pulled the trigger he blacked out and went into shock.

Detective Charla Phillips with the Beaumont Police Department testified that she arrived on the scene at about ten o'clock at night on June 12, 2012, she was advised to go to the station, and she learned that Tyler wanted to speak with detectives. Detective Phillips testified that Tyler was given his *Miranda* warnings, stated that he understood the warnings, signed the warnings, and voluntarily agreed to an interview by Detective Phillips and Detective Pratt. According to Detective Phillips, Tyler told them that he murdered S.V. Detective Pratt testified that Tyler appeared to be honest and calm during the interview. According to Detective Pratt, Tyler stated that S.V. dropped to her knees and raised her hands prior to him pulling the trigger.

6

Juan Rojas, a trace evidence examiner with the Texas Department of Public Safety Crime Lab, testified that he tested the gunshot residue kit in this case collected from Tyler, and the kit tested positive for gunshot residue. Sue Kelly, a crime scene technician for the Beaumont Police Department, testified that she attended the autopsy of S.V. and took photographs. According to Kelly, the photographs she took show that S.V. had a wound to her forehead, and the doctor performing the autopsy removed a bullet from S.V.'s head and gave it to Kelly for evidentiary purposes. Deputy Bradley Bruns with the Harris County Sheriff's Department testified that in 2012 he was a firearms and tool mark examiner, he examined the 9mm firearm and the shell casing recovered in this case, and that, in his opinion, the shell casing was fired from the 9mm firearm submitted for testing.

Tyler testified that he was diagnosed with schizophrenia, has problems with his memory and has blackouts, hears voices, and "experience[s] extreme paranoid thoughts." According to Tyler, he did not remember all of the events on the day of S.V.'s death, but that he remembered that he intended "to scare her and not to shoot her and all of a sudden the gun just went off." He testified he did not remember pulling the trigger and he explained he was "deeply remorseful."

Legal Sufficiency

In issues one and two, Tyler argues the evidence was legally insufficient to prove that he knowingly and intentionally committed the alleged offense of murder. Specifically, Tyler contends that the evidence the State presented arguably could support a conviction for causing S.V.'s death recklessly or by criminal negligence, but not that Tyler had the requisite *mens rea* or that he intentionally or knowingly caused S.V.'s death.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *See Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to

that resolution. *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17). "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).

As previously discussed, the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13. Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded, beyond a reasonable doubt, that Tyler committed the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1); *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13; *see also Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. We overrule issues one and two.

Request for Jury Instruction

In his third issue, Tyler contends the trial court abused its discretion by denying Tyler's request for a jury instruction for the lesser-included offense of

9

manslaughter. According to Tyler, he was entitled to the lesser-included offense instruction because there was some evidence that he recklessly, not intentionally or knowingly, caused S.V.'s death, and that "[i]t was up to the jury to determine the strength and believability of this evidence[.]"

"[A] lesser-included offense instruction shall be included in the jury charge if: (1) 'the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense.'" *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006) (quoting *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005)).

To determine whether the requested charge is for a lesser-included offense of the charged offense, we examine the pleadings and make this determination as a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Because manslaughter is a lesser-included offense of murder, the first prong of the test is satisfied. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000); *see also* Tex. Code Crim. Proc. art. 37.09(3) (West 2006). In order to satisfy the second prong of the test, there must be some evidence that would allow a rational jury to find that if Tyler was guilty, he was guilty only of manslaughter. *See Guzman*, 188 S.W.3d at 188-89. In this step, anything more than a scintilla of evidence may be sufficient to entitle a

10

defendant to a lesser-included charge. *Hall*, 225 S.W.3d at 536. "[T]he evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

On appeal, Tyler does not point this Court to any specific evidence in support of his argument. Manslaughter would require a finding that Tyler recklessly caused S.V.'s death. *See* Tex. Penal Code Ann. § 19.04 (West 2011). In determining whether there is evidence to support a charge on recklessness, a statement that a defendant did not intend to kill the victim "cannot be plucked out of the record and examined in a vacuum." *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986).

To raise manslaughter, Tyler must have presented affirmative evidence that he recklessly caused S.V.'s death, specifically that he was aware of, but consciously disregarded, a substantial and unjustifiable risk that the result—a death—would occur. *See Roy v. State*, 509 S.W.3d 315, 317-18 (Tex. Crim. App. 2017). Tyler testified that he only intended to scare S.V. According to Tyler, he blacked out when he pulled the trigger, and he does not remember what happened. This evidence, however, does not demonstrate that Tyler recklessly caused the death of S.V. *See* Tex. Penal Code Ann. § 6.03(c) (West 2011) (defining "recklessly"); *Schroeder v.*

*State*, 123 S.W.3d 398, 400-01 (Tex. Crim. App. 2003) (Appellant who testified that he remembered the events leading up to the shooting but suddenly "blacked out" and had no recollection of actually shooting the victim could not have been aware of having caused the victim's death at the time of the shooting; the trial court did not err by not submitting to the jury a manslaughter charge as a lesser-included offense because "[e]vidence of a defendant's inability to remember causing the death of the victim does not entitle the defendant to a charge on the lesser-included offense of manslaughter[.]").

Tyler's niece testified that Tyler and S.V. had argued that day and that Tyler was upset with S.V. because he believed she was "cheating on him[.]" In his statement to law enforcement, Tyler admitted that he drove S.V. to a remote location, he intended to scare her, that he pointed the gun at her, that she got on her knees and put her hands up, and that he shot S.V. in the head. In light of the other evidence showing that Tyler acted intentionally and knowingly, and considering the entire record, we conclude that the evidence does not show that, if Tyler is guilty, he is guilty only of acting recklessly. *See Cavazos*, 382 S.W.3d at 385 ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene . . . , and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots. The

evidence here does not support a finding of recklessness and does not rise to level that would convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense."); *see also Cardenas*, 30 S.W.3d at 393.

Under the circumstances of this case, we cannot say that the trial court improperly denied Tyler's request for a jury instruction on the lesser-included offense of manslaughter. We overrule issue three. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 31, 2017
Opinion Delivered March 7, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.