

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-16-00630-CR & 04-16-00631-CR

Cody Lon **SMITH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court Nos. B-07-057 & B-15-631
Honorable Rex Emerson, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 27, 2019

AFFIRMED

Cody Lon Smith was convicted by a jury of aggravated assault. Based on this conviction, Smith's guilt was also adjudicated in trial court cause number B-07-57. With regard to his aggravated assault conviction, Smith contends: (1) the trial court erred in allowing the indictment to be amended; (2) the trial court erred in overruling Smith's objection that paragraph four of the application paragraph of the jury charge constituted a comment on the evidence and in denying Smith's request to include a charge on the lesser included offense of deadly conduct; (3) the questioning of a witness regarding whether Smith's actions were reckless constituted structural

error; and (4) the trial court erred in denying Smith's motion for a change of venue. Smith also contends that if his aggravated assault conviction is reversed, the trial court also erred in adjudicating his guilt in trial court cause number B-07-57. Finally, Smith asserts this court must be disqualified or recused from considering his appeals, and the trial court must be disqualified or recused in the event the underlying causes are remanded for further proceedings. We affirm the trial court's judgments.

### RECUSAL OF THIS COURT

In his eighth point of error, Smith contends this court must be disqualified or recused based on this court's actions "causing the necessity of mandamus in 87,158-01." By order dated August 3, 2018, this court previously denied Smith's Motion for Recusal and to Disqualify the Fourth Court of Appeals. Smith's eighth point of error is overruled.

### AMENDMENT TO INDICTMENT

In his first two points of error, Smith contends the trial court erred in allowing the indictment to be amended because it charged him with a different offense and added a new definition of recklessness that was not screened by a grand jury.

Smith was indicted for aggravated assault of Rhonda Louise Masters. The indictment alleged Masters was a member of Smith's family and Smith intentionally, knowingly, or recklessly caused serious bodily injury to Masters by shooting her with a firearm. Masters died as a result of the shooting.

On March 7, 2016, Smith filed a motion to quash the indictment asserting, among other complaints, that the indictment failed to allege the act or acts relied upon to constitute recklessness as required by article 21.15 of the Texas Code of Criminal Procedure. On March 11, 2016, the trial court granted Smith's motion as to his complaint regarding required compliance with article 21.15. On March 17, 2016, the State filed a motion to amend the indictment to allege the act or

acts relied upon to constitute recklessness were the "firearm was not properly stored and was not properly secured and not properly operated" and Smith shot Masters with the firearm "while [he] was under the influence of a controlled substance." On March 22, 2016, the trial court granted the State's motion and amended the indictment. Smith did not file any additional motions objecting to the amended indictment before the case proceeded to trial.

Articles 1.14(b) and 28.10 of the Texas Code of Criminal Procedure contain the statutory provisions governing amendments to indictments. TEX. CODE CRIM. PROC. ANN. arts. 1.14(b), 28.10. Article 1.14(b) provides:

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

*Id*. art. 1.14(b). Consistent with article 1.14(b), article 28.10(a) provides:

> (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

*Id*. art. 28.10(a). Finally, with regard to amendments made after trial commences, article 28.10(b) and article 28.10(c) provide:

> (b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

> (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

*Id*. art. 28.10(b)-(c).

In this case, the indictment was amended on March 22, 2016, and trial did not commence until June 7, 2016. Because Smith did not object to the amended indictment before the trial

commenced, his first two points of error are waived. *Id*. art. 1.14(b); *Ramirez v. State*, 90 S.W.3d 884, 886 (Tex. App.—San Antonio 2002, pet. ref'd); *Hoitt v. State*, 30 S.W.3d 670, 674 (Tex. App.—Texarkana 2000, pet. ref'd); *see also Lebo v. State*, 100 S.W.3d 417, 420 (Tex. App.—San Antonio 2002, pet. ref'd) (holding defendant precluded from raising complaint about any wrongful amendment to the indictment by failing to object before trial).[1]

#### JURY CHARGE

In his third and fourth points of error, Smith contends the trial court erred in overruling his objection to the jury charge and in denying his request for a charge on a lesser included offense.

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if we find error, we analyze that error for harm." *Id.*

In his third point of error, Smith contends the trial court erred in overruling his objection that paragraph four of the application paragraph of the charge commented on the evidence. Because Smith waived any complaint regarding the amended indictment, and the jury charge tracked the language of the indictment, the trial court did not err in overruling Smith's objection. *See Kent v. State*, 483 S.W.3d 557, 561 (Tex. Crim. App. 2016) (overruling jury charge complaint where jury charge tracked the indictment); *Trevino v. State*, 470 S.W.3d 660, 663-64 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding trial court did not err by submitting jury charge that accurately followed the amended indictment where defendant waived any error related to the amendment of the indictment). Accordingly, Smith's third point of error is overruled.[2]

---

[1] In his brief, Smith appears to assert he preserved these points of error for review by his objections to the jury charge. Clearly, Smith's objections to the jury charge at the charge conference following the closing of the evidence were not made before trial commenced.

[2] We note Smith combined his arguments relating to his first three points of error in one section of his brief. It does not appear, however, that Smith separately argues his third point of error. Instead, Smith relies on his complaint regarding the amendment to the indictment as support for his contention that paragraph four constituted a comment on the evidence.

In his fourth point of error, Smith contends the trial court erred in denying his request for a lesser included offense of deadly conduct in the charge.

Appellate courts apply a two-prong test to determine whether a defendant was entitled to a charge on a lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *Munoz v. State*, 533 S.W.3d 448, 453 (Tex. App.—San Antonio 2017, pet. ref'd). "First, we compare the elements and the facts of the offense alleged in the indictment with the elements of the potential lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense." *Munoz*, 533 S.W.3d at 453 (citing *Hall*, 225 S.W.3d 531, 535). "This question is a matter of law, and is not dependent on the evidence to be produced at trial." *Id*. (citing *Hall*, 225 S.W.3d at 535). "The second step of the analysis requires us to determine whether there is some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id*. (citing *Hall*, 225 S.W.3d at 536). "The evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Id*. (internal quotation omitted).

Although Smith asserts he was entitled to a charge on the lesser included offense of deadly conduct, he fails to argue that he met the second prong of the applicable test or provide citations to the record establishing that "there is some evidence in the record that would permit a rational jury to find that, if [he] is guilty, he is guilty only of the lesser-included offense." *Id*. Under the Texas Rules of Appellate Procedure, a "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i).

In its brief, the State argues Smith "cannot argue that there is some evidence that he recklessly engaged in conduct that placed Rhonda Masters in imminent danger of serious bodily injury [deadly conduct], but no evidence that he recklessly caused serious bodily injury

[aggravated assault]." Citing *Guzman v. State*, 188 S.W.3d 185, 194 (Tex. Crim. App. 2006), the State relies on the undisputed evidence that Masters died as a result of the gunshot wound she sustained. *See Guzman*, 188 S.W.3d at 194 (holding no evidence in the record would permit a jury to rationally find the defendant guilty only of deadly conduct and not aggravated assault where aggravated assault and deadly conduct involved proof of same reckless mental state and actions resulted in serious bodily injury). The State also argues, "Appellant's briefing stops upon establishing only the first prong of the ***Hall*** analysis."

Because Smith's brief contains no argument or citations to the record regarding the second prong of the test for determining whether he was entitled to a charge on the lesser included offense, he has failed to properly brief his fourth issue. *See* TEX. R. APP. P. 38.1(i).

### CAPTAIN TWISS'S TESTIMONY

In his fifth point of error, Smith contends "[i]t was structural error for the prosecution to ask Captain Twiss if appellant's actions were reckless because the answer encompassed a legal conclusion, or alternatively an inappropriate conclusion offered by an unqualified expert, which denied appellant due process for a fair trial."

The testimony about which Smith complains followed the admission of Smith's written statement into evidence. In his written statement, Smith stated he took his loaded gun to bed and laid down beside Masters who was already asleep. When Smith went to use the restroom, he left the gun on the bed. When he returned from the restroom, he saw Masters had turned in the bed and was lying "real close" to the gun. Smith thought he saw shadows from men he thought were outside his house and straddled Masters to retrieve the gun. Smith said he reached for the gun, and it discharged shooting Masters.

The following excerpt from the record contains the testimony about which Smith complains in context and the trial court's ruling on Smith's objection:

Q. All right. Carol, do you — are you required to take firearm safety training, as well?

A. We do it as a matter of our qualification process.

Q. There are just some basic pretty given rules about firearm safety; are there not?

A. Yes.

Q. What is your opinion with respect to taking a loaded gun into bed?

A. It's dangerous.

Q. Is it reckless?

A. Absolutely.

[Defense counsel]: Objection, Your Honor. That calls for a legal conclusion. She is not able to testify to that.

[Prosecutor]: She just said she could testify to it without objection.

[Defense counsel]: Judge, I move to strike. That's a legal conclusion in this case. She is not allowed — and have the jury disregard that. She doesn't have that qualification. That goes into a purview that is solely reserved for the jury.

THE COURT: And I will strike the answer. You need to rephrase your question, please.

[Defense counsel]: I request that he — may we approach, Your Honor?

THE COURT: You may.

(Proceedings at bench:)

THE COURT: Do you want a jury instruction?

[Defense counsel]: What now?

THE COURT: Do you want a jury instruction?

[Defense counsel]: I am going to request that you — yes, and that you instruct the jury to disregard, and I think at this point I'm going to ask for a mistrial. She misspoke. Maybe she did, but asking an opinion on it that she is not qualified to give, that's difficult to unring that bell. She is not qualified to give that opinion.

[Prosecutor]: We are going to get the opinion from another witness.

THE COURT: I will give the jury an instruction. I'm going to deny the motion for instructed verdict.

(In open court:)

THE COURT: All right, ladies and gentlemen of the jury, the definition of "reckless" is a legal opinion that will be presented to you. The way the question was couched and answer that was provided does not fit within that mold, so I'm going to order you to disregard the answer to that question, please.

Q. (By [prosecutor]) And Captain Twiss, is it — would taking a loaded gun to bed be life-threatening potentially?

A. Could be, yes.

Q. Off safety be life-threatening?

A. Yes.

Q. Bullet in the chamber off safety life threatening?

A. Yes.

Q. Bullet in the chamber, off safety, and according to Mr. Smith, a very light trigger life-threatening?

A. Yes.

Q. Would that be a responsible handling of a firearm?
A. No.

Where a trial court sustains a defense objection to evidence, grants an instruction to disregard, but denies a motion for a mistrial, the issue presented is whether the trial court's refusal to grant the mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77.

In this case, nothing in the record suggests that the question and answer "were of such a nature that they could not be cured by an instruction to disregard." *Martinez v. State*, 17 S.W.3d 677, 689–90 (Tex. Crim. App. 2000). The trial court's instruction informed the jury that only the jury could decide if Smith's actions were reckless, and we hold Captain Twiss's testimony was not of such a character that the jury could not have followed the trial court's instruction to disregard. Smith's fifth point of error is overruled.

## VENUE MOTION

In his sixth point of error, Smith asserts the trial court erred in denying his motion for a change of venue based on pretrial publicity.

A trial court's ruling on a motion for change of venue is reviewed under an abuse of discretion standard, and the trial court's ruling must be upheld if it falls within the zone of reasonable disagreement. *Buntion v. State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016); *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). Article 31.03(a) of the Texas Code of Criminal Procedure provides that a change of venue may be granted if the defendant establishes "there exists in the county where the prosecution is commenced so great a prejudice against him

that he cannot obtain a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 31.03(a). To justify a change of venue based upon media attention, a defendant must show that the publicity was pervasive, prejudicial, and inflammatory. *Buntion*, 482 S.W.3d at 71; *Gonzalez*, 222 S.W.3d at 449. Widespread publicity alone is not inherently prejudicial. *Buntion*, 482 S.W.3d at 71; *Gonzalez*, 222 S.W.3d at 449. Extensive knowledge of the case or defendant in the community as a result of pretrial publicity is not sufficient if there is not also some showing of prejudicial or inflammatory coverage. *Buntion*, 482 S.W.3d at 71; *Gonzalez*, 222 S.W.3d at 449. News stories that are accurate and objective in their coverage are generally considered not to be prejudicial or inflammatory. *Buntion*, 482 S.W.3d at 71.

In Smith's amended motion for change of venue and the affidavits attached to the motion, Smith asserted he could not obtain a fair and impartial trial in Kerr County because of the great prejudice resulting from undue publicity regarding the case. The motion and the affidavits contain the following identical statement regarding the publicity:

> The Kerrville Daily Times, Hill Country Community Journal, KSAT TV, KENS TV, and the San Antonio Express News has run, on multiple occasions news accounts regarding the charges pending against the Defendant, wherein statements were made by law enforcement officials which discuss the facts of the alleged events on February 1, 2015. Specifically, certain articles as published by the Kerrville Daily Times referenced facts of the case, and the Defendant's previous involvement with the Kerr County Sheriff's Department.

Smith sought a change of venue to Bandera County, Texas.

At the hearing on the motion, Smith first called Jack Parker, the circulation manager of the Kerrville Daily Times, who testified the newspaper has 5,400 subscribers, including 1,200 online subscribers, and distributes approximately 10,000 newspapers on the weekend. Parker also testified the online subscribers included subscribers in "Kerr County, the Harper area, Bandera County, Gillespie County, Comfort area and Fredericksburg." Finally, Parker testified the approximate population of Kerr County was 50,000.

The next witness called to testify was Mark Armstrong, the managing editor of the Kerrville Daily Times. Armstrong was asked about six articles that were pulled from the newspaper's online site, and Armstrong testified he recognized the articles which were introduced into evidence. Armstrong also testified that in another case receiving similar media attention, a jury was able to be selected in Kerr County.

A copy of an article from the Hill Country Journal also was introduced into evidence with a stipulation that the Hill Country Journal has 3,600 subscribers, including 1,000 online subscribers, and is circulated to Kerr County and areas in Fredericksburg, Comfort and Medina.

The State first called Lucy Wilke, a felony prosecutor in the 216th District Court which serves Kerr, Gillespie, and Kendall Counties. Wilke testified that her office receives the Kerrville Daily Times, but she had not read anything in the newspaper about Smith's case. Wilke also testified she had been involved in highly-publicized criminal cases in Kerr County for over 19 years and had never seen a situation in Kerr County where a jury panel was irreparably tainted because of pretrial publicity. Wilke testified a large number of the jury panels she questioned had never read the Kerrville Daily Times, and some period of time elapsed between the publication of the articles and the trial. Wilke did not believe the publication of articles in the Kerrville Daily Times would prevent a defendant from receiving a fair trial.

The State next called Todd Burdick, an investigator for the district attorney's office for the 198th District Court. Burdick testified that in his sixteen years of participating in trials, he never experienced any difficultly empaneling a jury in Kerr County due to publicity. Burdick specifically recalled being able to select a jury in a case that had more publicity than the Smith case.

The bulk of the articles introduced into evidence were dated in early February of 2015, immediately following the date of the offense, with one article dated July 9, 2015, and a year-end

recap dated December 31, 2015, which contained a reference to an earlier article. Finally, one article was dated February 1, 2016. Voir dire commenced in Smith's trial on June 7, 2016.

After hearing closing arguments, the trial court stated it had read the articles and was denying the motion; however, the trial court assured Smith that "if we get into jury selection and the panel is biased and prejudiced to an overwhelming extent, we will stop the process and we will move the trial." Based on the evidence presented, we hold the trial court did not abuse its discretion in denying Smith's motion to transfer venue. Smith's sixth point of error is overruled.

### ADJUDICATION OF GUILT

In his seventh point of error, Smith asserts the adjudication of his guilt in trial court cause number B-07-57 must be reversed if this court reverses his conviction in this appeal and orders a new trial "since the adjudication was dependent on the outcome of the newest offense." Because we have overruled all of Smith's issues and affirm the trial court's judgment in this appeal, Smith's seventh point of error is overruled.

### RECUSAL OF THE TRIAL COURT

In his ninth point of error, Smith contends the trial court must be disqualified or recused from any proceedings on remand. Because we affirm the trial court's judgments, Smith's ninth point of error is moot.

### CONCLUSION

The trial court's judgments are affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH